## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### NO. 24-30043

---

### UNITED STATES OF AMERICA,
**Plaintiff - Appellee**

v.

### GEORGE PETERSON,
**Defendant - Appellant**

---

### Appeal From The United States District Court
### For The Eastern District Of Louisiana

**Honorable Jay C. Zainey, District Judge**
**Criminal Docket No. 22-231, Section "A"**

---

## BRIEF OF APPELLEE, THE UNITED STATES OF AMERICA

---

DUANE A. EVANS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF LOUISIANA

KEVIN G. BOITMANN
Assistant U.S. Attorney, Chief of Appeals

DAVID BERMAN
DIANE HOLLENSHEAD COPES
Assistant U.S. Attorneys
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
(504) 680-3052

Attorneys for the United States of America

July 3, 2024

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a)(2)(C), the government submits that oral argument is not required. The facts and legal arguments are adequately presented in the briefs and record, and this Court's decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ......................................... ii

TABLE OF CONTENTS ............................................................................. iii

TABLE OF AUTHORITIES ........................................................................ v

STATEMENT OF JURISDICTION ............................................................. 1

STATEMENT OF THE ISSUES ................................................................. 2

STATEMENT OF THE CASE ..................................................................... 2

SUMMARY OF ARGUMENT .................................................................... 6

ARGUMENT .............................................................................................. 7

I.     The district court properly denied George Peterson's motion to dismiss his indictment because the federal registration requirement for silencers does not violate the Second Amendment. .................................................................................. 7

      A.     Standard of review. ........................................................... 8

      B.     The district court properly applied the law in finding silencers are not "bearable arms" covered by the Second Amendment. ................................................................. 9

      C.     Even if silencers are "bearable arms," they are "dangerous and unusual weapons" not protected by the Second Amendment. ....................................................... 13

      D.     The silencer registration requirement does not "infringe" on the right to bear arms. ................................................. 16

      E.     The NFA's registration requirement is readily analogous to historical regulation of commerce in firearms. .................. 18

II.    The district court's denial of Peterson's motion to suppress evidence obtained pursuant to a search warrant issued by a federal magistrate judge was not error. ......................................... 20

      A.     Standard of review. ......................................................... 20

      B.     The district court did not err in applying the good faith exception to the exclusionary rule. .................................... 21

             1.     Peterson has waived any claim that the good faith exception does not apply. ........................................ 22

             2.     The good faith exception applies. .............................. 24

C.     If the good faith exception does not apply, the federal
       magistrate had a substantial basis for finding probable
       cause.............................................................................25

CONCLUSION..........................................................................................30

CERTIFICATE OF SERVICE AND ECF COMPLIANCE.............................31

# TABLE OF AUTHORITIES

**Cases**

*10 Ring Precision, Inc. v. Jones*, 722 F.3d 711 (5th Cir. 2013)...........................27

*District of Columbia v. Heller*, 554 U.S. 570 (2008)....................... 10, 11, 13, 16

*Horton v. California*, 496 U.S. 128 (1990) .....................................................28

*Lauren C. by & through Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363 (5th Cir. 2018) ...........................................................................13

*McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024) .........................................17

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) ........ passim

*Paxton v. Dettelbach*, No. 23-10802, ___F.4th___, 2024 WL 3082331 (5th Cir. June 21, 2024)...........................................................................7, 8

*Teixeira v. Cnty. of Alameda*, 873 F.3d 670 (9th Cir. 2017) ........................ 18, 19

*United States v. Beaty*, No. 6:22-cr-95, 2023 WL 9853255 (M.D. Fla. Jan. 20, 2023)........................................................ 12, 13, 15, 20

*United States v. Berger*, No. 5:22-cr-00033, 2024 WL 449247 (E.D. Pa. Feb. 6, 2024)............................................................................12

*United States v. Brown*, 941 F.2d 1300 (5th Cir. 1991) .............................. 24, 25

*United States v. Cherna*, 184 F.3d 403 (5th Cir. 1999)..........................21, 22, 25

*United States v. Comeaux*, No. 6:23-cr-00183, 2024 WL 115929 (W.D. La. Jan. 10, 2024)...........................................................................15

*United States v. Cooperman*, No. 22-cr-146, 2023 WL 4762710 (N.D. Ill. July 26, 2023)...........................................................................11

*United States v. Cox*, 906 F.3d 1170 (10th Cir. 2018) ................................ 10, 15

v

*United States v. Craig*, 861 F.2d 818 (5th Cir. 1988) ........................................22

*United States v. Davis*, 226 F.3d 346 (5th Cir. 2000) .......................................21

*United States v. Fernandez*, 48 F.4th 405 (5th Cir. 2022) ...............................23

*United States v. Gonzalez*, 766 F. App'x 178 (5th Cir. 2019) ...........................24

*United States v. Holton*, No. 3:21-cr-0482-B, 2022 WL 4820154
    (N.D. Tex. Oct. 3, 2022)..............................................................................28

*United States v. Leon*, 468 U.S. 897 (1984)..............................................21, 22

*United States v. Lightner*, No. 8:24-cr-21, 2024 WL 2882237
    (M.D. Fla. June 7, 2024)..............................................................................20

*United States v. Martinez*, 102 F.4th 677 (5th Cir. 2024)................................21

*United States v. Narviz-Guerra*, 148 F.3d 530 (5th Cir. 1998).........................23

*United States v. Ortiz*, 927 F.3d 868 (5th Cir. 2019) ......................................23

*United States v. Portillo-Munoz*, 643 F.3d 437 (5th Cir. 2011)..........................8

*United States v. Poulos*, 895 F.2d 1113 (6th Cir. 1990)............................27, 28

*United States v. Rahimi*, 560 U.S.__, 2024 WL 3074728
    (U.S. June 21, 2024) ..................................................................10, 18, 20

*United States v. Royce*, No. 1:22-cr-130, 2023 WL 2163677
    (D.N.D. Feb. 22, 2023)...............................................................................13

*United States v. Saleem*, 659 F. Supp. 3d 683 (W.D.N.C. 2023).......11, 12, 15, 17

*United States v. Schieferle*, No. 23-11792, 2024 WL 1905326
    (11th Cir. May 1, 2024)................................................................................7

*United States v. Scully*, 951 F.3d 656 (5th Cir. 2020)......................................25

*United States v. Serrano*, 651 F. Supp. 3d 1192 (S.D. Cal. 2023).....................20

*United States v. Sibley*, 448 F.3d 754 (5th Cir. 2006)........................................22

*United States v. Stalnaker*, 571 F.3d 428 (5th Cir. 2009) ...............................23

*United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505 (1992)........................14

*United States v. Tidrow*, No. 2:17-cr-127-D, 2018 WL 2221531
    (N.D. Tex. May 15, 2018)...............................................................................28

*United States v. Villalobos*, No. 3:19-cr-00040, 2023 WL 3044770
    (D. Idaho Apr. 21, 2023)................................................................................20

*United States v. Waldrop*, 404 F.3d 365 (5th Cir. 2005) ...................................27

**Statutes**

18 U.S.C. § 921.................................................................................................4, 7

18 U.S.C. § 922..............................................................................................26, 29

18 U.S.C. § 923..................................................................................2, 26, 27, 28

18 U.S.C. § 924..................................................................................................26

18 U.S.C. § 1001 ..........................................................................................26, 28

18 U.S.C. § 3231 ...................................................................................................1

26 U.S.C. § 5801 et seq. ............................................................... 4, 7, 8, 16

28 U.S.C. § 1291 ...................................................................................................1

**Other Authorities**

Robert J. Spitzer, *Gun Accessories and the Second Amendment: Assault Weapons,
    Magazines, and Silencers*, 83 Law & Contemp. Probs. 231 (2020)................14

Robert J. Spitzer, *Gun Law History in the United States and Second Amendment
    Rights*, 80 Law & Contemp. Probs. 55 (2017)........................................ 18, 19

**Rules**

Fed. R. Crim. P. 11 ................................................................5, 6

Fed. R. App. P. 28.................................................................23

Fed. R. App. P. 34................................................................. ii

27 C.F.R. § 478.41................................................................2

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

## NO. 24-30043

---

### UNITED STATES OF AMERICA,
**Plaintiff - Appellee**

v.

### GEORGE PETERSON,
**Defendant - Appellant**

---

**Appeal From The United States District Court
For The Eastern District Of Louisiana**

**Honorable Jay C. Zainey, District Judge
Criminal Docket No. 22-231, Section "A"**

---

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1291. The district court had

jurisdiction under 18 U.S.C. § 3231. This is an appeal from a final judgment of the

United States District Court for the Eastern District of Louisiana in a criminal case.

## STATEMENT OF THE ISSUES

1.   Whether the district court erred by finding that silencers are not
     "bearable arms" covered by the Second Amendment, or, even if so, whether
     George Peterson's indictment for possessing an unregistered silencer
     violated the Second Amendment.

2.   Whether the district court erred by applying the good faith exception to deny
     Peterson's motion to suppress evidence obtained through a search of his
     illegal firearms business, or, even if so, whether the magistrate had a
     substantial basis for concluding that probable cause existed.

## STATEMENT OF THE CASE

George Peterson conducted business through his firearms dealership, PDW
Solutions, LLC ("PDW"), under a federal firearms license obtained through his
representations that his business would be exclusively online and at gun shows and
that he would not store or sell firearms from his home. ROA.163-66 (factual basis);
*see* ROA.130-31 (search warrant affidavit).[1] ATF received information that
Peterson was not complying with several federal laws and regulations, including
that, contrary to his representations in his FFL application, Peterson kept PDW's

---

[1] A potential gun dealer first must obtain a federal firearms license ("FFL") from ATF to permit it to engage in the business of selling firearms. *See* ROA.264 (presentence investigation report); 18 U.S.C. § 923(a); 27 C.F.R. § 478.41(a).

firearms inventory at his residence and sold guns from a storefront on his property. ROA.131-32.

ATF and local law enforcement then purchased several firearms from PDW at Peterson's illegal storefront at his residence. ROA.132-35. Through the purchases, ATF discovered Peterson failed to file a multiple sales report (that one buyer bought two or more firearms) for any transaction and sold two firearms despite indications that Peterson knew he was engaging in prohibited out-of-state sales. ROA.132-35. ATF also became aware of other concerns, including that more than 70 firearms sold by PDW had been recovered from crime scenes. *See* ROA.135-36.

An ATF agent obtained a federal search warrant for Peterson's property supported by a ten-page affidavit citing this and other information that Peterson committed four federal firearms crimes. ROA.127-42. The warrant authorized the seizure of, among others, records related to firearm purchases and sales, firearms, and other weapons related to the dealing of firearms. ROA.140-43. ATF executed the search warrant the next day, and, pertinent here, discovered a firearm silencer in a safe in Peterson's bedroom. ROA.163. The silencer, which was in operating

condition, did not have a serial number and was not registered as required by federal firearms law. ROA.164-65.[2]

A grand jury in the Eastern District of Louisiana indicted Peterson for possessing an unregistered silencer under 26 U.S.C. §§ 5841, 5861(d), and 5871. ROA.9-10. He filed a motion to dismiss the indictment arguing the registration requirement for silencers violates the Second Amendment. ROA.82-110. Peterson also filed a motion to suppress evidence obtained during the search of his property. ROA.111-14. The government opposed both. ROA.115-26, 144-55.

In its written order, the district court denied Peterson's motion to dismiss the indictment, applying *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). ROA.158-68; *see id.* at 159-60 (citing *Bruen* first step of determining whether the Second Amendment's plain text covers an individual's conduct). Referencing cases that found the Second Amendment's plain text does not cover silencers under *Bruen*, the district court similarly found silencers are accessories not "bearable arms" protected by the Second Amendment. ROA.158-60. Because

---

[2] Section 5861(d) of the National Firearms Act provides that "[i]t shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record[,]" 26 U.S.C. § 5861(d), including a "silencer" as defined in 18 U.S.C. § 921. *See* 26 U.S.C. § 5845. Section 921 defines a "firearm silencer" as "any device for silencing, muffling, or diminishing the report of a portable firearm." 18 U.S.C. § 921(a)(25). The Act provides for penalties of up to 10 years in prison and a $10,000 fine for failure to comply with its terms. 26 U.S.C. § 5871.

Peterson's motion fails the initial *Bruen* inquiry, the district court denied his motion. ROA.160.

The district court also denied Peterson's motion to suppress the evidence. ROA.160-61. Because Peterson failed to rebut the good faith exception that applies to evidence obtained through a search warrant, the district court found the exception applied, and the analysis need not go any farther. ROA.160-61. The district court also noted that Peterson had conceded probable cause for one offense listed in the search warrant application. ROA.160-61.

Peterson executed a negotiated plea agreement with the government that allowed him to enter a conditional guilty plea under Rule 11(a)(2) of the Federal Rules of Criminal Procedure that reserved his right to appeal the district court's denial of his motion to dismiss the indictment and motion to suppress evidence. *See* ROA.232-36 (plea agreement); *see also* ROA.162 (minute entry); ROA.163-66 (Peterson's signed factual basis admitting to possession of a silencer in operating condition that was not registered in the National Firearms Registration and Transfer Record).

The district court sentenced Peterson to 24 months' imprisonment—within the advisory guideline range of 18 to 24 months. *See* ROA.218 (minute entry); ROA.220-26 (judgment); ROA.295-98 (statement of reasons); *see also* ROA.275 (final PSR guideline range calculation).

Peterson timely noticed his appeal of the two issues he had reserved through his Rule 11(a)(2) plea agreement—the denial of his motion to dismiss the indictment and the denial of his motion to suppress the evidence. ROA.227.

## SUMMARY OF ARGUMENT

George Peterson's Second Amendment challenge to the National Firearms Act's silencer registration requirement fails because, as the district court found, silencers are not "bearable arms" protected by the Second Amendment. But even if the district court erred in this finding, silencers are "dangerous and unusual weapons" that remain outside the Second Amendment's scope. And even if silencers are protected by the Second Amendment, the registration requirement does not "infringe" on the right to possess a silencer. Finally, the silencer registration requirement is analogous to historical regulations on firearms sales and thus, in any event, would pass constitutional muster.

The district court did not err in denying Peterson's motion to suppress evidence obtained from his illegal residential firearms business during the execution of a search warrant. As the district court found, the motion failed in the first instance because Peterson did not attempt to rebut the good faith exception to the suppression of evidence, nor does he do so here. Further, even if Peterson could overcome this barrier, the magistrate had a substantial basis for concluding that

probable cause existed. For these reasons, the Court should affirm Peterson's conviction.

## ARGUMENT

**I.     The district court properly denied George Peterson's motion to dismiss his indictment because the federal registration requirement for silencers does not violate the Second Amendment.**

The Second Amendment safeguards "the right of the people to keep and bear Arms." U.S. Const., amend. II. Peterson appeals the district court's denial of his motion to dismiss his indictment and its rejection of his claim that the federal registration requirement for silencers violates his constitutional right to keep and bear arms. *See* Peterson Br. 13-26.

"A silencer is a device that attaches to the muzzle of a firearm and makes the firearm quieter when discharged." *Paxton v. Dettelbach*, No. 23-10802, ___F.4th___, 2024 WL 3082331, at *1 (5th Cir. June 21, 2024) (discussing registration requirement in injunction context and citing 18 U.S.C. § 921(a)(25), which defines "firearm silencer" as "any device for silencing, muffling, or diminishing the report of a portable firearm"); *see also United States v. Schieferle*, No. 23-11792, 2024 WL 1905326, at *2-3 & n.2 (11th Cir. May 1, 2024) (discussing silencers). Federal law regulates various aspects of firearm manufacturing, distribution, registration, taxation, transfer, and possession, and includes silencers within its scope. *See, e.g.*, 26 U.S.C. §§ 5801-72; 18 U.S.C.

§ 921(a)(25). Section 5861(d) of the National Firearms Act makes it unlawful for a person to receive or possess a firearm (including a silencer) to whom it is not registered in the National Firearms Registration and Transfer Record. 26 U.S.C. § 5861(d). For registration, a person must fill out an application identifying the applicant and the firearm to be registered and pay an excise tax of $200. 26 U.S.C. §§ 5811-12, 5841-42. Violating these procedures is a crime punishable by up to ten years' imprisonment, a maximum fine of $10,000, or both. *Paxton*, 2024 WL 3082331, at *1 (citing 26 U.S.C. § 5871).

As set forth below, penalizing Peterson for possessing an unregistered silencer does not violate the Second Amendment because (1) as the district court found, silencers are not "bearable arms" covered by the Second Amendment; (2) regardless, silencers are dangerous and unusual and are not protected by the Second Amendment; (3) registration does not infringe on any right to bear a silencer; and (4) registration is consistent with the historical tradition of regulating the sale and taxation of firearms.

## A.    Standard of review.

This Court reviews the district court's denial of Peterson's motion to dismiss his indictment on Second Amendment grounds de novo. *United States v. Portillo-Munoz*, 643 F.3d 437, 439 (5th Cir. 2011), *as revised* (June 29, 2011).

**B.     The district court properly applied the law in finding silencers are not "bearable arms" covered by the Second Amendment.**

The district court did not err in denying Peterson's motion to dismiss because, under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), his indictment for knowingly receiving and possessing an unregistered firearm ("a black cylinder which is a firearm silencer and firearm muffler") was constitutional under the Second Amendment. *See* ROA.158-60; *see also* ROA.9.[3] Referencing courts across the country which "have ruled on this exact issue," the district court engaged in a *Bruen* inquiry to determine if the silencer regulation was constitutional, looking first to whether was covered by the plain text of the Second Amendment. ROA.159.[4] The district court found Peterson's challenge failed at the initial inquiry—the Second Amendment's plain text does not cover silencers because they do not qualify as "bearable arms" under Supreme Court precedent. ROA.159. Rather, a silencer "cannot on its own cause any harm and is not useful independent of its attachment to a firearm." ROA.159. Because Peterson's motion failed the initial *Bruen* inquiry, the district court found it need not reach the second

_____

[3] Neither Peterson's motion to dismiss in the district court nor his appellate brief in this Court mentions *Bruen*. Instead, he relies on a means-end scrutiny test that *Bruen* explicitly rejected. *Compare Bruen*, 597 U.S. at 17, *with* ROA.99-106; Peterson Br. 21-25.

[4] The district court cited several cases, *see* ROA.158-60, and the government had included numerous others in opposing Peterson's motion to dismiss his indictment. *See* ROA.144-47.

inquiry—whether the regulation "'is consistent with this Nation's historical tradition of firearm regulation.'" ROA.159 (citing *Bruen*, 597 U.S. at 17).

The district court correctly relied on the "bearable arms" language from *Bruen* and *District of Columbia v. Heller*, 554 U.S. 570 (2008), in which the Supreme Court articulated the bedrock principle that the Second Amendment applies to "bearable arms." *Id.* at 582; *see also* ROA.159. "Bearable arms" are "weapons of offence, or armour of defence" and "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 582 (quotation marks and alterations omitted) (referenced in district court's order, ROA.159). *Bruen* reaffirmed *Heller*'s delineation of the Second Amendment's scope as extending to "bearable arms." *See Bruen*, 597 U.S. at 28 (Second Amendment extends to "'all instruments that constitute bearable arms'") (quoting *Heller*, 554 U.S. at 582); *see also United States v. Rahimi*, 560 U.S.__, 2024 WL 3074728, at *6 (U.S. June 21, 2024) (same).

Silencers are not protected by the Second Amendment for the simple reason that they are not "bearable arms." As the Tenth Circuit explained pre-*Bruen* but consistent with both *Bruen* and *Heller*, a "silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence'). Accordingly, it can't be a 'bearable arm' protected by the Second Amendment." *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018); *see also United States v. Saleem*, 659 F. Supp. 3d 683, 697

(W.D.N.C. 2023) ("[S]ilencers, because they are not independently operable and do not serve any central self-defense purpose, are not firearms within the meaning of the Second Amendment but are instead firearm accessories that fall outside its protection."); *United States v. Cooperman*, No. 22-cr-146, 2023 WL 4762710, at *1 (N.D. Ill. July 26, 2023) ("[A]s a firearm accessory, silencers are not weapons and therefore cannot be 'bearable arms' protected by the Second Amendment."). In the language of *Bruen* and *Heller*, because a silencer is not a "bearable arm," Peterson's possession of an unregistered silencer is not covered by the Second Amendment's plain text. *See Bruen*, 597 U.S. at 24-25.

Nor are silencers "implicitly" protected by the Second Amendment because they are "indispensable to [the] exercise of the core [S]econd Amendment right, i.e., the use of a gun for self-defense in the home." *See* Peterson Br. 17. A silencer is self-evidently not "an integral part of a firearm" nor "necessary to use . . . weapons effectively," and silencer regulation would not, and has not, rendered the right to bear arms meaningless. *See* Peterson Br. 17-19. An operable firearm will work perfectly well without a silencer, but a silencer will not transform an inoperable firearm into an operable one.

Peterson asserts that the use of silencers carries certain benefits: "As explained above, using silencers improves accuracy, reduces disorientation after firing, and helps prevent substantial and irreversible damage to users' health."

Peterson Br. 20. Peterson, however, does not appear to explain this proposition earlier in his brief, nor did he support it with any evidence in the district court. But even if he had, these arguments have been repeatedly rejected. *See, e.g.*, *United States v. Berger*, No. 5:22-cr-00033, 2024 WL 449247, at *17 (E.D. Pa. Feb. 6, 2024) (rejecting arguments that silencers are protected by the Second Amendment because they "improve accuracy," "reduce hearing loss and disorientation immediately after firing," and "prevent long-term hearing damage," and holding that a silencer "is merely an accessory which is unnecessary to the essential operation of a firearm"); *United States v. Beaty*, No. 6:22-cr-95, 2023 WL 9853255, at *8 (M.D. Fla. Jan. 20, 2023) ("[The application of Second Amendment protections should not turn on the ability to conjure fanciful arguments on how firearm accessories facilitate armed self-defense. One could easily craft a counter-argument: silencers render weapons more unwieldy, more difficult to conceal, and minimize the noise which frightens and thus disorients the notional assailant.").

Regardless, any potential utility of a silencer does not transform it into a workable firearm, nor is it necessary for the operation of a firearm, and thus it is not protected by the Second Amendment. *See, e.g.*, *Saleem*, 659 F. Supp. 3d at 698 ("The use of a silencer is in no way necessary to the effective use of a firearm—it certainly has benefits for the user, but unlike cleaning materials or bullets, a

firearm can be used safely and effectively without a silencer."); *United States v. Royce*, No. 1:22-cr-130, 2023 WL 2163677, at \*4 (D.N.D. Feb. 22, 2023) ("A silencer is not necessary to make a firearm operable. Rather, a silencer is simply a means to reduce sound omitted from a firearm."); *Beaty*, 2023 WL 9853255, at \*8 ("Simply put, a silencer is not a firearm, because it does not capable of expelling a projectile, and does not facilitate that purpose.").

The Court should affirm the district court's denial of Peterson's motion to dismiss because, as the district court found, silencers are not "bearable arms" protected by the Second Amendment. *See* ROA.158-60.

### C.    Even if silencers are "bearable arms," they are "dangerous and unusual weapons" not protected by the Second Amendment.

Not all "arms" receive Second Amendment protection. "[T]he right [is] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627). Even assuming that silencers are "arms," the National Firearm Act's regulation of silencers is well in line with the "historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Id.*[5]

---

[5] Because the district court held that silencers are not "bearable arms," it did not reach the government's additional arguments. This Court, however, may affirm on those alternative grounds. *See, e.g.*, *Lauren C. by & through Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 374 (5th Cir. 2018) ("This Court may affirm on grounds other than those relied upon by the district court when the record contains an adequate and independent basis for that result.") (quotation marks omitted).

Silencers have been recognized as dangerous since their creation. *See* Robert J. Spitzer, *Gun Accessories and the Second Amendment: Assault Weapons, Magazines, and Silencers*, 83 Law & Contemp. Probs. 231, 246-247 (2020). The invention was patented in 1908 and "[o]bjections to civilian use of silencers appeared almost immediately." *Id.* at 246. States began banning them the following year and between "1909 and 1936, at least fifteen states enacted silencer restrictions." *Id.* at 248.

A principal concern about silencers was that "they would be used by criminals seeking to avoid detection." *Id.* at 247. For example, "Chicago police discovered as early as 1922 that the city's lawbreakers were ordering sales catalogs from the Maxim Silencer Company, and New York authorities reported similar criminal interest in silencers around the same time." *Id.* (quotation marks omitted). By 1930, the inventor of the silencer and his business, Maxim Silencer Company, "'discontinued manufacturing silencers because of the popular impression that this invention was an aid to crime.'" *Id.* (quoting *Maxim Bans Gun Silencer*, N.Y. TIMES, May 8, 1930, at 27). This understanding of the danger posed by the possession of silencers was shared by Congress, which included them in the National Firearms Act, a statute enacted "to regulate certain weapons likely to be used for criminal purposes." *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992); *see also id.* at 516-17 (citing legislative history that "clearly

14

indicated congressional intent [was] to cover under the National Firearms Act only such modern and lethal weapons, except pistols and revolvers, as could be used readily and efficiently by criminals or gangsters").

Unlike handguns "indisputably in 'common use' for self-defense today," *Bruen*, 597 U.S. at 47, silencers are uncommon and unnecessary for self-defense. Rather, silencers have been subject to regulation (including outright prohibition) since their invention and thus, even assuming they are "arms," they are "dangerous and unusual" and fall outside the scope of the Second Amendment. *See, e.g.*, *United States v. Comeaux*, No. 6:23-cr-00183, 2024 WL 115929, at *1-3 (W.D. La. Jan. 10, 2024) (silencers are "'dangerous and unusual weapons' that are not protected by the Second Amendment" and have the "potential to substantially increase the level of violence when used in connection with criminal activity" because they "allow a criminal to fire more shots without detection, avoid apprehension after shooting someone, or both"); *Beaty*, 2023 WL 9853255, at *8 ("[E]ven if a silencer qualifies as a firearm—which it doesn't—prohibitions against carrying dangerous and unusual weapons survive the Second Amendment, and a silencer is an unusual weapon."); *Saleem,* 2023 WL 2334417, at *10 ("silencers fall into the category of 'dangerous and unusual weapons' and are outside the scope of the Second Amendment's protection"); *see also Cox*, 906 F.3d at 1186 n.13 ("Though we needn't decide the issue, we note that the government

15

cites authority concluding that silencers are dangerous and unusual, the type of

'arm' traditionally excluded from the Second Amendment's protection.").

### D.    The silencer registration requirement does not "infringe" on the right to bear arms.

Further, even if silencers were protected by the Second Amendment, the

National Firearms Act's registration requirement would not "infringe" on the right

to keep and bear them. *Heller* and *Bruen* establish that the government cannot

prohibit—whether by outright ban or open-ended discretion or other abuses in

licensing—the possession and carrying of handguns for self-defense. But *Bruen*

expressly did not disturb the "shall issue" licensing requirements of 43 states

because those laws "do not require applicants to show an atypical need for armed

self-defense." *Bruen*, 597 U.S. at 38 n.9. Rather, the Court distinguished "shall

issue" laws, which may require a "background check" and "firearms safety course"

but "appear to contain only narrow, objective, and definite standards guiding

licensing officials," from "may issue" licensing laws that bestow broad discretion

on licensing officials to arbitrarily deny licenses. *See id.* (quotation marks omitted).

The National Firearms Act imposes requirements akin to those of the "shall-

issue" licenses approved in *Bruen*— To legally possess a silencer, the Act requires

only that an individual submit fingerprints and a photograph, pass a background

check, and pay a $200 tax. *See* 26 U.S.C. §§ 5811-12, 5841-42. And the

registration requirement is exactly the type of "objective and definite" licensing

standard approved in *Bruen. See Bruen*, 597 U.S. at 38 n.9. Accordingly, consistent with *Bruen*, even if silencers were protected by the Second Amendment, the registration requirement does not "infringe" on the right to possess them. *See Saleem,* 659 F. Supp. 3d at 699 n.9 (noting that "the NFA's registration and taxation requirements are of the type that the Supreme Court in *Bruen* determined were permissible").

Peterson does not attempt to distinguish the NFA's silencer registration requirement from the "shall-issue" licensing requirements approved in *Bruen* (indeed, he does not mention *Bruen* at all). Instead, applying an obsolete means-end scrutiny test, he argues that that the NFA "burdens" his claimed right to possesses a silencer because of the alleged average wait time to process a registration application. *See* Peterson Br. 21-22. Peterson, however, does not allege that he attempted to register his silencer or that he experienced any wait time at all to do so. Rather, he claims that he "had forgotten about the homemade suppressor until agents discovered it" during the execution of a search warrant at his home. Peterson Br. 12. Because Peterson did not attempt to register his silencer, he cannot show any alleged wait time infringed on his right to bear a silencer. *See McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024) (as recognized in *Bruen*, even a "shall issue" regime might become unconstitutional where it is "put toward

17

abusive ends," *e.g.*, by imposing lengthy wait times, but "a period of 10 days does not qualify") (quotation marks omitted).

### E. The NFA's registration requirement is readily analogous to historical regulation of commerce in firearms.

Finally, even if silencers were covered by the Second Amendment, the National Firearms Act's registration requirement would pass constitutional muster because it "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24-25. As the Supreme Court observed in *Rahimi*, however, this methodology was "not meant to suggest a law trapped in amber." *Rahimi*, 2024 WL 3074728, at *6. "By that same logic, the Second Amendment permits more than just those regulations identical to ones that could be found in 1791. Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers." *Id.* "The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Id.* (quoting *Bruen*, 597 U.S. at 30).

"[C]olonial governments substantially controlled the firearms trade." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017). For example, "a 1652 New York law outlawed illegal trading of guns, gun powder, and lead by private individuals." Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 76 (2017). "A 1631 Virginia law required the recording not only of all new arrivals to the colony, but

also 'of arms and munitions.'" *Id.* "In response to the threat posed by Indian tribes, the colonies of Massachusetts, Connecticut, Maryland, and Virginia all passed laws in the first half of the seventeenth century making it a crime to sell, give, or otherwise deliver firearms or ammunition to Indians." *Teixeira*, 873 F.3d at 685. In the early 17th century, Connecticut banned residents from selling firearms outside the colony; Virginia likewise provided that its residents could sell arms and ammunition only to residents of the colony. *Id.* at 685 & n.18. And other colonial governments "controlled the conditions of trade" in firearms. *Id.* at 685.

States continued to enact laws governing "the manufacture, sale, [and] transport" of guns and ammunition in the 18th and 19th centuries. Spitzer, *Gun Law History in the United States*, 80 Law & Contemp. Probs. at 74. And throughout the 1800s, states imposed taxes on gun ownership: Rhode Island in 1851, North Carolina in 1856, Georgia in 1866, Mississippi in 1867, Louisiana in 1870, and Florida in 1898. *See id.* at 76-77.

Like these early laws, the NFA's registration requirement does not categorically prohibit the possession of silencers. It merely imposes a record-keeping requirement to trace the transfer of silencers and ensure that they do not fall into the hands of dangerous individuals. Although the NFA is not identical to these historical statutes, the government need only identify a "historical *analogue*, not a historical *twin*." *Bruen*, 597 U.S. at 30 (emphasis in original); *see also*

*Rahimi*, 2024 WL 3074728, at \*6 ("A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit[.]"). Here, the colonial regulation of commerce in firearms—in particular, the recording of firearms and certain transfer restrictions—provides a sufficient historical analog. *See, e.g.*, *United States v. Serrano*, 651 F. Supp. 3d 1192, 1211-13 (S.D. Cal. 2023) (silencers do not fall within scope of Second Amendment but, even if they did, the NFA's registration requirement is justified by the historical analogues cited above); *United States v. Lightner*, No. 8:24-cr-21, 2024 WL 2882237, at \*3 (M.D. Fla. June 7, 2024) (same); *United States v. Villalobos*, No. 3:19-cr-00040, 2023 WL 3044770, at \*13 (D. Idaho Apr. 21, 2023) (D. Idaho Apr. 21, 2023) (silencers do not fall within scope of Second amendment but, even if they did, the "the regulation of silencers is readily analogous to the Nation's history of imposing commercial regulations on firearms"); *Beaty*, 2023 WL 9853255, at \*8 n.11 ("The NFA's record-keeping and attendant payment requirements are consistent with our Nation's historical regulation of firearms.").

## II.   The district court's denial of Peterson's motion to suppress evidence obtained pursuant to a search warrant issued by a federal magistrate judge was not error.

### A.   Standard of review.

When reviewing a ruling on a motion to suppress, this Court reviews "factual findings for clear error and legal conclusions *de novo*, viewing the

evidence in the light most favorable to the prevailing party, here, the Government."
*United States v. Martinez*, 102 F.4th 677, 683 (5th Cir. 2024). This Court employs
a two-step process for reviewing a district court's denial of a motion to suppress
evidence obtained pursuant to a search warrant. *United States v. Cherna*, 184 F.3d
403, 407 (5th Cir. 1999). First, the Court determines whether the good faith
exception to the exclusionary rule articulated by the Supreme Court in *United
States v. Leon*, 468 U.S. 897 (1984), applies. *United States v. Davis*, 226 F.3d 346,
351 (5th Cir. 2000). "This Court reviews the district court's determination that the
good faith exception applies *de novo*." *Cherna*, 184 F.3d at 406. "If the Court
agrees that the good faith exception applies, the Court's review ends and it affirms
the district court's denial of the suppression motion." *Id.* at 407.

If the good faith exception does not apply, this Court reviews a district court
court's determination of probable cause for a search warrant de novo. *Id.* at 406.
"This [C]ourt may affirm on any basis established by the record." *Martinez*, 102
F.4th at 683.

**B.     The district court did not err in applying the good faith exception
to the exclusionary rule.**

"The good faith exception provides that if reliance on a defective warrant is
'objectively reasonable,' the Fourth Amendment does not require suppression of
evidence obtained pursuant to that warrant." *Davis*, 226 F.3d at 351. "Issuance of a
warrant by a magistrate normally suffices to establish good faith on the part of law

enforcement officers who conduct a search pursuant to the warrant." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988) (citing *Leon*, 468 U.S. at 922).

There are only four situations in which the good faith exception does not apply: "(1) the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew or should have known was false; (2) the issuing magistrate abandoned the judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid." *United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006) (citing *Cherna*, 184 F.3d at 407-08).

### 1. Peterson has waived any claim that the good faith exception does not apply.

Peterson failed to argue to the district court, *see* ROA.111-14, and fails to argue to this Court, that the good faith exception is inapplicable. *See* Peterson Br. 26-29. Indeed, he has not even identified a basis for challenging the ATF agents' reliance on the search warrant issued by the federal magistrate. He has instead made the same argument in both courts that probable cause did not exist as to three of the four offenses cited in the warrant application. That is not sufficient to overcome the good faith exception. Peterson does not claim that the warrant was "so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable." *Sibley*, 448 F.3d at 757.

Because Peterson did not argue in the district court that the good faith exception is inapplicable, he has waived any such argument on appeal. "Generally, arguments not raised before the district court are waived and will not be considered on appeal." *United States v. Fernandez*, 48 F.4th 405, 412 (5th Cir. 2022) (quotation marks omitted). "And failure adequately to brief an issue on appeal constitutes waiver of that argument." *Id.* (quotation marks and brackets omitted); *see, e.g.*, Fed. R. App. P. 28(a)(8)(A) (an appellant's argument must contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *United States v. Stalnaker*, 571 F.3d 428, 433 (5th Cir. 2009) ("Where a defendant asserts that the evidence was insufficient to convict him but fails to make *any argument whatsoever* to support this contention, the issue is considered abandoned.") (emphasis in original, quotation marks omitted); *United States v. Ortiz*, 927 F.3d 868, 874 n.1 (5th Cir. 2019) (defendant who focused only on element of knowing possession waived discussion of others) (citing *United States v. Narviz-Guerra*, 148 F.3d 530, 538 (5th Cir. 1998) ("[I]ssues not briefed are waived.")). Because Peterson's brief fails to address the district court's determination that the good faith exception applies, he has forfeited his appellate challenge to the court's denial of his motion to suppress.

23

### 2.    The good faith exception applies.

In any event, as the district court found, the good faith exception applies here. After noting that Peterson had not rebutted the good faith exception but instead focused only on the magistrate's finding of probable cause, the district court concluded that, in the affidavit, "each offense was supported by specific facts of the criminal misconduct by the Defendant." ROA.161. "The good-faith exception applies to this search, and the analysis need not go any further." ROA.161. The district court did not err in this finding.

The type of deficient affidavits that are so utterly devoid of probable cause as to render reliance on them unreasonable are "often described as bare bones and containing wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Gonzalez*, 766 F. App'x 178, 182 (5th Cir. 2019) (quotation marks omitted). Generally, an affidavit of this type "states the affiant 'has cause to suspect and does believe'" or "ha[s] received reliable information from a credible person and do[es] believe" that contraband is located on the property. *United States v. Brown*, 941 F.2d 1300, 1303 n.1 (5th Cir. 1991).

The affidavit at issue here does not contain such defects. As the district court stated, *see* ROA.161, each offense was supported by specific facts—*i.e.*, Peterson's false representation to the ATF that he would not store or sell guns on his property,

ROA.131; three separate law enforcement purchases from PDW, ROA.132-35;

PDW's failure to ever file a multiple sales report, ROA.132-33; and time-to-crime

statistics indicative of illegal firearm sales. ROA.135-36. Thus, the ten-page search

warrant application in this case was not so lacking in indicia of probable cause or

so facially deficient that executing officers could not reasonably rely on it, and it

does not resemble the "bare bones" conclusory applications that defeat the good

faith exception. *Compare* ROA.128-37, *with Brown*, 941 F.2d at 1303 n.1.

### C.   If the good faith exception does not apply, the federal magistrate had a substantial basis for finding probable cause.

Only if the Court concludes that the good faith exception does not apply

does it proceed to the second step to review the magistrate judge's determination of

probable cause. *See Cherna*, 184 F.3d at 407. If the good faith exception does not

apply, the Court then ensures "that the magistrate had a substantial basis for

concluding that probable cause existed." *United States v. Scully*, 951 F.3d 656, 664

(5th Cir. 2020). "A magistrate's determination is entitled to great deference by

reviewing courts." *Brown*, 941 F.2d at 1302. The question for the reviewing court

is not whether probable cause in fact existed, but only whether the "magistrate had

a substantial basis for concluding that probable cause existed." *Cherna*, 184 F.3d at

407 (quotation marks and ellipses omitted). The magistrate had a substantial basis

here.

The search warrant application detailed violations of four statutes: 18 U.S.C. § 1001(a)(3) (submitting material false writings to the ATF); 18 U.S.C. §§ 923(g)(1)(A) and 924(a)(1)(D) (failure to report multiple sales of firearms); 18 U.S.C. §§ 922(b)(5) and 924(a)(1)(D) (failure to record required information during the sale of a firearm); and 18 U.S.C. §§ 922(b)(3) and 924(a)(1)(D) (willful delivery of a firearm to a person the deliverer knew or had reason to know did not reside in Louisiana). *See* ROA.128. In support of the warrant, the affidavit stated that, since becoming licensed, PDW had never filed a multiple sales report. ROA.132. The affidavit further described that in May 2022 a local law enforcement officer purchased two firearms from PDW and, on two separate occasions in June 2022, ATF also purchased two firearms from PDW. ROA.132-33. Peterson did not report the multiple sales on any of the three occasions as required by federal law. ROA.132-33. These facts provided the magistrate a substantial basis for finding probable cause and issuing the search warrant.

With respect to his violation of 18 U.S.C. § 923(g)(1)(A), as the district court noted, Peterson conceded that "probable cause existed to search his property pursuant to his failure to report multiple sales of firearms[,]" ROA.161; *see also* ROA.112. He makes the same concession on appeal. *See* Peterson Br. 28. The Court should reject Peterson's unsupported claims that his violations of 18 U.S.C. § 923(g)(1)(A) do not provide probable cause to search and seize firearms he was

unlawfully selling from his home. *See* Peterson Br. 28. That statute specifically authorizes, upon issuance of a warrant from a magistrate, the search of an FFL's firearm inventory when ATF discovers a record-keeping violation. *See* 18 U.S.C. § 923(g)(1)(A)(ii); *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 720 (5th Cir. 2013) ("Section 923(g)(1)(A) authorizes ATF to inspect a licensee's records and inventory if it has 'reasonable cause to believe a violation has occurred and that evidence thereof may be found on such premises.'") (quoting 18 U.S.C. § 923(g)(1)(A)) (ellipses omitted).

Additionally, under the plain view doctrine, a seizure is permissible "where a police officer has a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (quotation marks omitted). Thus, because, as Peterson concedes, agents had probable cause to search his property, *see* Peterson Br. 28; ROA.112; ATF agents properly seized the silencer because they lawfully searched the area where the silencer was found, and the incriminating nature of the silencer (which also lacked a serial number as required by law) was immediately apparent to the ATF agents. *See, e.g.*, *United States v. Poulos*, 895 F.2d 1113, 1121–22 (6th Cir. 1990) (plain view doctrine permitted seizure of silencer parts found in box by IRS agent while searching for financial records because silencer component parts were "intrinsically suspicious"

27

and "criminality was immediately apparent"), *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990); *United States v. Holton*, No. 3:21-cr-0482-B, 2022 WL 4820154, at *3 (N.D. Tex. Oct. 3, 2022) (explaining that under the NFA no person may possess an unregistered firearm silencer or silencer parts and holding that "the mere presence of the silencer parts in the hotel room made their incriminating nature immediately apparent") (citing *Poulos*, 895 F.2d at 1122; *United States v. Tidrow*, No. 2:17-cr-127-D, 2018 WL 2221531, at *5 (N.D. Tex. May 15, 2018) (incriminating nature of homemade silencer was immediately apparent)). Accordingly, Peterson's concession that probable cause existed that he violated 18 U.S.C. § 923(g)(1)(A) alone defeats his suppression argument.

The magistrate also correctly found probable cause as to the additional three offenses. With respect to Peterson's false statement to the ATF that no firearms would be stored or sold on his property in violation of 18 U.S.C. § 1001, the search warrant application detailed Peterson's written statement to the ATF representing that "he would conduct business at gun-shows and online entirely, with no storefront and no business activity within his personal residence." ROA.131. The affidavit then explained that, through surveillance and undercover operations, ATF observed that Peterson was conducting retail operations on his property contrary to his representations to the ATF. ROA.131. The affidavit described the exterior and interior of Peterson's store on his property, his advertised hours of business, and

28

that customers would visit the location to purchase firearms. ROA.130. The affidavit also recited both federal and local law enforcement purchases of firearms from Peterson on his property. ROA.132-35.

With respect to Peterson's willful failure to record required information from a firearms purchaser in violation of 18 U.S.C. § 922(b)(5) and willful delivery of a firearm to a person outside the state in violation of 18 U.S.C. § 922(b)(3), the search warrant application described the purchase of two firearms and ammunition by an undercover ATF agent and ATF confidential informant from Peterson on his property.[6] As set out in detail in the affidavit, the CI showed Peterson an out-of-state identification card. ROA.134. The CI indicated that they were going to purchase a firearm for himself/herself and later told Peterson that they were "ready" to purchase two pistols. ROA.133. The undercover ATF agent then said he would be filling out the ATF background check to purchase the guns and, while doing so, told the CI "I think you should get one of each." ROA.133. Peterson ultimately sold two guns to, nominally, the undercover ATF agent and ammunition to the CI. ROA.134. The CI handed the undercover ATF agent money for the ammunition and one of the pistols right in front of Peterson. ROA.134

---

[6] Peterson's claim that the "allegations of the CI should be disregarded as there is no statement in the affidavit that the particular CI had given reliable information in the past," Peterson Br. at 27, is irrelevant. An ATF special agent was present for the transaction, and the affidavit, on its face, does not rely on information from the CI.

Peterson put the pistols and ammunition into a single bag and the CI picked it up and carried it out. ROA.135.

Accordingly, while the Court need not reach the federal magistrate's determination of probable cause, the magistrate had a substantial basis for finding probable cause as to all four offenses set out in the warrant application.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court affirm the district court's denial of George Peterson's motion to dismiss the indictment and motion to suppress evidence.

<div style="margin-left: 40%;">

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY


/s/ *David Berman*
DAVID BERMAN
Assistant United States Attorney
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3052
E-Mail: David.berman@usdoj.gov

</div>

## **CERTIFICATE OF SERVICE AND ECF COMPLIANCE**

I hereby certify that on this 3rd day of July, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  The following ECF-registered counsel of record was served by Electronic Notice of Docket Activity:

Richard J. Richthofen, Jr., rick@rjrlawfirm.com

I further certify the foregoing document meets the required privacy redactions; that it is an exact copy of the paper document; and the document has been scanned with the most recent version of a commercial virus scanning program and is virus-free.

/s/ *David Berman*
DAVID BERMAN