# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
February 6, 2025
Lyle W. Cayce
Clerk

No. 24-30043

United States of America,

*Plaintiff—Appellee,*

versus

George Peterson,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CR-231-1
_____

Before Elrod, *Chief Judge*, and Higginbotham and Southwick, *Circuit Judges*.

Jennifer Walker Elrod, *Chief Judge*:

Following a law enforcement raid on his home and place of business, George Peterson pleaded guilty to possessing an unregistered suppressor in violation of various provisions of the National Firearms Act (NFA). On appeal, he challenges the denial of two pretrial motions: a motion to dismiss his indictment on Second Amendment grounds and a motion to suppress evidence on Fourth Amendment grounds. Because suppressors do not trigger Second Amendment protection, we AFFIRM the district court's denial of Peterson's motion to dismiss. And because the exclusionary rule's

good-faith exception prevents suppression of the suppressor discovered at Peterson's home, we also AFFIRM the district court's denial of his motion to suppress.

I

A

In the summer of 2022, federal and state law enforcement officers executed a warrant at PDW Solutions, LLC, Peterson's firearm business that he operated out of his home. An Eastern District of Louisiana magistrate judge issued that warrant based on an affidavit submitted by a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) officer.

According to the officer, the ATF had spent several months investigating Peterson before seeking the warrant. In one instance, the ATF sent a Jefferson Parish Sherriff's Office deputy into PDW to purchase two handguns. Peterson sold the officer the guns, but he did not report the transaction to the ATF despite 27 C.F.R. § 478.126a's requirement that he must. In another instance, an undercover ATF agent patronized PDW with a confidential informant. Even though Peterson was aware that the informant could not lawfully purchase a firearm, he nevertheless sold the agent two firearms after watching the informant hand the agent money for the purchase. Peterson failed to report this transaction as well. And because all of this occurred at Peterson's home, the ATF believed that Peterson had also violated 18 U.S.C. § 1001(a)(3) by representing, in his federal-firearms-license application, that he would conduct business only at gun shows and out of a leased storage unit.

In light of this information, the magistrate judge issued a warrant authorizing a search of Peterson's home (where the ATF alleged he stored his inventory) and of another structure attached to his home (where it alleged he conducted business). The warrant also authorized seizure of PDW's

transactional and financial records, proceeds from firearm sales, firearms themselves, and computers and other digital devices, among other things.

The ATF executed the warrant the next day. During the search, ATF agents discovered a firearm suppressor inside Peterson's bedroom-closet safe.[1] Interestingly, Peterson did not purchase this suppressor from a manufacturer; he acquired materials and a kit to make it himself. The suppressor was in working condition, but it neither had a serial number nor was registered in the National Firearms Registration and Transfer Record.

B

An Eastern District of Louisiana grand jury indicted Peterson for possession of an unregistered suppressor under 26 U.S.C. §§ 5841, 5861(d), and 5871.

In response, Peterson filed a motion to dismiss the indictment and a motion to suppress the evidence obtained through the ATF's search of his property. Peterson argued (1) that the indictment should be dismissed because the NFA's registration scheme violates the Second Amendment and

---

[1] A suppressor is "a device that attaches to the muzzle of a firearm and makes the firearm quieter when discharged." *Paxton v. Dettelbach*, 105 F.4th 708, 710 (5th Cir. 2024); *see also* 18 U.S.C. § 921(a)(25) ("The terms 'firearm silencer' and 'firearm muffler' mean any device for silencing, muffling, or diminishing the report of a portable firearm . . . ."). Though many use the term "silencer," that term "is a misnomer, in that—despite movie fantasies—a noise suppressor reduces decibels[] but does not actually 'silence' the discharge of a firearm. Noise may be muffled or diminished, and maybe by only a few decibels at that, but it can still be heard." Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second Amendment*, 46 Cumb. L. Rev. 33, 36 (2015). Suppressors function by causing the gasses emanating from a fired weapon to do so more slowly and therefore more quietly. *Id.* at 41–42. Hiram Maxim (whom TIME Magazine affectionately labeled "Dr. Shush" and "noise's bogeyman") is credited not only with inventing the suppressor but also with using the same sort of technology to abate the noise produced by early combustion engines. *Id.* at 41, 45 & n.79.

(2) that the evidence obtained from the ATF's search of his home should be suppressed because that search violated the Fourth Amendment.

The district court denied both motions, and Peterson agreed to enter a conditional guilty plea. He reserved the right to appeal the denial of both his motion to dismiss and his motion to suppress.

The district court sentenced Peterson to twenty-four months' imprisonment, and he timely appealed his two preserved issues.

II

Peterson first challenges the district court's denial of his motion to dismiss. Specifically, he argues that the NFA's suppressor-registration requirement unconstitutionally burdens his Second Amendment rights. But because we conclude that suppressors are not "Arms" within the Second Amendment's purview, we disagree.

A

"We review *de novo* a district court's denial of a motion to dismiss an indictment, including any underlying constitutional claims." *United States v. Parrales-Guzman*, 922 F.3d 706, 707 (5th Cir. 2019).

The Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. But as Justice Scalia cautioned in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that right "is not unlimited." *United States v. Diaz*, 116 F.4th 458, 463 (5th Cir. 2024) (citing *Heller*, 554 U.S. at 626). To identify its limits, we employ a two-step analysis. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). "We start, as always, with the text." *United States v. Giglio*, No. 24-60047, --- F.4th ---, slip op. at 4 (5th Cir. Jan. 23, 2025). That is, we first consider whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 24. If it does, "the Constitution presumptively protects that

4

conduct." *Id.* But if it does not, we need not move to the second step, which compares our "Nation's historical tradition of firearm regulation" against the regulation at issue. *See id.*

"[T]he Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 28 (quoting *Heller*, 554 U.S. at 582) (italics added). And as both parties agree, "arms" in the Second Amendment sense comprises "weapons of offence," "armour of defence," and "anything that a man wears for his defence, . . . takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581–82 (alterations adopted and quotation marks omitted). That is, to constitute an "arm," the object in question must be a weapon. *Heller*, 554 U.S. at 592 (reasoning that the Second Amendment "guarantee[s] the individual right to possess and carry weapons").

B

Whether suppressors constitute "arms" is an issue of first impression in our circuit. And so far as we can tell, every court to have addressed it has decided the question in the negative. The Tenth Circuit adopted that position in *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018). Just last month, the Fourth Circuit agreed (albeit in an unpublished opinion). *See United States v. Saleem*, No. 23-4693, 2024 WL 5084523, at *2 (4th Cir. Dec. 12, 2024).[2] And district courts from at least two other circuits have reached the same conclusion. *See United States v. Cooperman*, No. 22-CR-146, 2023 WL 4762710, at *1–2 (N.D. Ill. July 26, 2023); *United States v. Villalobos*, No.

---

[2] *See also United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009) (reasoning that suppressors are not protected by the Second Amendment because they "are not 'typically possessed by law-abiding citizens for lawful purposes'" (quoting *Heller*, 554 U.S. at 625)).

No. 24-30043

3:19-CR-00040-DCN, 2023 WL 3044770, at *11–12 (D. Idaho Apr. 21, 2023).

Peterson posits that suppressors are "an integral part of a firearm" and therefore warrant Second Amendment protection: "Inasmuch as a bullet must pass through an attached [suppressor] to arrive at its intended target," suppressors are used for casting and striking and thus fit *Heller*'s definition. But that is wrong. A suppressor, by itself, is not a weapon. Without being attached to a firearm, it would not be of much use for self-defense. And unless a suppressor itself is thrown (which, of course, is not how firearms work), it cannot do any casting or striking.[3] *See United States v. Hasson*, No. GJH-19-96, 2019 WL 4573424, at *4 n.5 (D. Md. Sept. 20, 2019) (noting that a suppressor "could be thrown at someone like a shoe or a baseball, which, most would agree, are not arms protected by the Second Amendment"). While a suppressor might prove useful to one casting or striking at another, that usefulness does not transform a gas dissipater into a bullet caster. Instead, we agree with the Tenth Circuit that a suppressor "is a firearm accessory . . . not a weapon." *Cox*, 906 F.3d at 1186.[4] And while possession of firearms themselves is covered by the plain text of the Second Amendment, possession of firearm accessories is not. *Id.* Accordingly,

---

[3] We do not mean to suggest that suppressors are not useful. Suppressors can reduce noise, recoil, and flash, and many gun owners utilize them to protect their hearing, be conscientious of neighbors, and avoid "spook[ing] game." Halbrook, *supra*, at 35, 42. Our point is simply that these benefits obtain only when a suppressor is used in conjunction with a firearm, which indicates that suppressors are not themselves "arms" in the Second Amendment sense.

[4] Though *Cox* predates *Bruen*, *Bruen* did not abrogate its reasoning. *See Bruen*, 597 U.S. at 72 (Alito, J., concurring) (noting that the majority opinion did not "decide anything about the kinds of weapons that people may possess").

Peterson has not shown that the NFA's registration scheme burdens a constitutionally protected right.

Attempting to broaden the Second Amendment's scope, Peterson points to *United States v. Miller*, 307 U.S. 174 (1939). That case, he says, stands for the proposition that "arms" includes the "'proper accoutrements' that render the firearm useful and functional." Notwithstanding that the Supreme Court did not identify this principle in *Heller*'s extensive treatment of *Miller*,[5] a suppressor is hardly the sort of "accoutrement" *Miller* contemplated. Rather, the 1785 Virginia statute quoted in *Miller* used that language to describe items like gunpowder, lead, and cartridges—items *necessary* to a firearm's operation, not just compatible with it. *See Miller*, 307 U.S. at 181–82. As the government aptly explains, "[a]n operable firearm will work perfectly well without a [suppressor], but a [suppressor] will not transform an inoperable firearm into an operable one."

This same point dispenses with Peterson's other scope-based argument. He cites *Ezell v. City of Chicago*, where the Seventh Circuit held that "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use." 651 F.3d 684, 704 (7th Cir. 2011). "[T]he core right," the court reasoned, "wouldn't mean much without the training and practice that make it effective," so it concluded that Chicago's city-wide firing-range ban was unlikely to pass Second Amendment muster. *Id.* at 704, 710. Even if we were to follow *Ezell*, it can hardly be said that suppressor regulation has rendered the right to bear arms meaningless. The use of a suppressor, as we noted above, is not necessary to the use of a firearm, so it is not protected by the plain text of the

---

[5] *See Heller*, 554 U.S. at 621-25; *see also id.* at 625 ("We . . . read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns.").

Second Amendment. The Second Amendment, therefore, is not offended by the NFA regulation, so we AFFIRM the district court's denial of Peterson's motion to dismiss.

### III

Next, Peterson challenges the denial of his motion to suppress the suppressor. He argues "that the affidavit in support of the subject warrant application failed to establish probable cause . . . in violation of the Fourth Amendment." But the good-faith exception to the exclusionary rule applies to the evidence at issue here. That is, irrespective of whether the underlying affidavit actually gave rise to probable cause, we conclude that it was reasonable for the officers executing the warrant to rely on it.[6] Accordingly, the exclusionary rule does not serve to bar admission of the suppressor, and the district court rightly denied Peterson's motion to dismiss.

### A

When considering appeals of motion-to-suppress rulings, we review "factual findings for clear error and legal conclusions *de novo*, viewing the evidence in the light most favorable to the prevailing party." *United States v. Martinez*, 102 F.4th 677, 683 (5th Cir. 2024). "The district court's

---

[6] The district court concluded that the good-faith exception barred application of the exclusionary rule. On appeal, though, Peterson does not mention the good-faith exception. He argues instead that "the affidavit in support of the subject warrant application failed to establish probable cause that a crime involving the seized firearms was committed, involving, or having a relationship with" his home. Even if this were true, it would not go toward establishing that the good-faith exception does not apply. *See United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006) (enumerating the four scenarios wherein the good-faith exception does not apply). Accordingly, Peterson has likely forfeited his good-faith-exception argument. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). But we need not rest our conclusion on this basis because, as we explain *infra*, we would affirm the district court's good-faith-exception decision even if Peterson's argument were preserved.

No. 24-30043

determination of the reasonableness of a law enforcement officer's reliance upon a warrant issued by a magistrate [judge]—for purposes of determining the applicability of the good-faith exception . . . —is also reviewed *de novo*." *United States v. Cherna*, 184 F.3d 403, 406–07 (5th Cir. 1999) (italics added).

If the good-faith exception applies, we "affirm the district court's denial of the motion to suppress." *United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006).

B

As the district court correctly reasoned, "[t]he good-faith exception allows reliance on [a] warrant even if the search warrant is defective so long as that reliance is objectively reasonable." "Issuance of a warrant by a magistrate [judge] normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). But the "exception does not apply when: (1) the magistrate [judge] issuing the warrant was misled by information in an affidavit that the affiant knew or should have known was false; (2) the issuing magistrate [judge] abandoned the judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid." *Sibley*, 448 F.4th at 757.

The district court rightly construed Peterson's argument as getting closest to addressing the third exception to the exception. *See supra* note 6. And we agree that, despite Peterson's protests, neither it nor any of the other exceptions apply. The warrant described "Peterson's false representation to the ATF that he would not store or sell guns on his property; three separate law enforcement purchases from PDW; [and] PDW's failure to ever file a multiple sales report." Regardless of whether these facts would actually give

rise to probable cause, they at least present "indicia of probable cause" sufficient to render belief in its existence reasonable. *See Sibley*, 448 F.3d at 757. Indeed, the affidavit at issue here stands in stark contrast to the sorts of "bare bones" affidavits that have been deemed insufficient. *See United States v. Brown*, 941 F.2d 1300, 1303 n.1 (5th Cir. 1991) (collecting examples). Accordingly, we conclude that the officers who executed the warrant acted reasonably in relying on it. And because none of the exceptions to the good-faith exception apply, it bars application of the exclusionary rule and the district court rightly denied Peterson's motion to suppress.

IV

For the forgoing reasons, we AFFIRM the district court's denial of Peterson's motion to dismiss and its denial of his motion to suppress.