No. 24-30043

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GEORGE PETERSON,

*Defendant-Appellant.*

---

Petition from the United States District Court for the Eastern District of Louisiana, Case No. 2:22-CR-231-1, the Honorable Jay C. Zainey

---

## DEFENDANT-APPELLANT'S
## PETITION FOR REHEARING EN BANC

---

Richard J. Richthofen, Jr.
3900 Canal Street
New Orleans, Louisiana 70119
Office: (504) 899-7949
Facsimile: (504) 899-2518
Email: rick@rjrlawfirm.com

Cody J. Wisniewski
FPC ACTION FOUNDATION
5550 Painted Mirage Rd.
Las Vegas, NV 89149
Telephone: (615) 955-4306
Facsimile: (615) 334-0463
cwi@fpcafhq.org

David H. Thompson
Peter A. Patterson
William V. Bergstrom
Athanasia O. Livas
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C., 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com
alivas@cooperkirk.com

*Counsel for Defendant-Appellant George Peterson*

**No. 24-30043**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GEORGE PETERSON,

*Defendant-Appellant.*

---

Petition from the United States District Court for the Eastern District of Louisiana,
Case No. 2:22-CR-231-1, the Honorable Jay C. Zainey

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.  **Plaintiff-Appellee:**

    **United States of America**

    Counsel:

    David M. Berman, Assistant U.S. Attorney
    Kevin G. Boitmann, Assistant U.S. Attorney
    Diane Hollenshead Copes, Assistant U.S. Attorney
    U.S. Attorney's Office
    Eastern District of Louisiana

650 Poydras Street, Suite 1600
New Orleans, LA 70130
(504) 680-3000
david.berman@usdoj.gov
kevin.boitmann@usdoj.gov
diane.copes@usdoj.gov

2. **<u>Defendant-Appellant</u>**:

**George Peterson**

<u>Counsel</u>:

David H. Thompson
Peter A. Patterson
William V. Bergstrom
Athanasia O. Livas
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C., 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com
alivas@cooperkirk.com

Richard J. Richthofen, Jr.
3900 Canal Street
New Orleans, Louisiana 70119
Office: (504) 899-7949
Facsimile: (504) 899-2518
Email: rick@rjrlawfirm.com

Cody J. Wisniewski
FPC ACTION FOUNDATION
5550 Painted Mirage Rd.
Las Vegas, NV 89149
Telephone: (615) 955-4306
Facsimile: (615) 334-0463
cwi@fpcafhq.org

/s/ David H. Thompson

David H. Thompson

*Counsel for Defendant-Appellant
George Peterson*

## RULE 40 STATEMENT

Firearm suppressors—which reduce but do not eliminate the noise emitted from a firearm—support the safe and effective use of a firearm and are commonly used for legal purposes in the United States.

Nevertheless, as a matter "of first impression in [this] circuit," the panel held that suppressors are afforded no Second Amendment protection whatsoever. Opinion, Doc. 62-1 at 5, 7–8 (Feb. 6. 2025) ("Op.") (attached as Ex. 1).

But the panel went beyond that. Rather than limit its holding to suppressors, the panel adopted a broad categorical rule: certain firearm parts, which the panel labeled as "firearm accessories," are not "covered by the plain text of the Second Amendment." Op. at 6. This categorical bar on the Second Amendment's reach contravenes the test laid down by the Supreme Court in its Second Amendment cases. *See United States v. Rahimi*, 602 U.S. 680 (2024); *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022); *District of Columbia v. Heller*, 554 U.S. 570 (2008). The Supreme Court has provided no such categorical exception and has instead broadly defined the Second Amendment's reach to include all instruments of defense—which necessarily includes instruments equipped with so-called "accessories," like suppressors, that affect the functionality of a firearm. Indeed, by regulating suppressors, the Government really is regulating suppressed firearms. As

the panel itself recognized, the benefits of using a suppressor are "obtain[ed] only when a suppressor is used in conjunction with a firearm." Op. at 6 n.3.

The important Second Amendment questions posed in this case merit the en banc court's attention. The panel acknowledged that "[w]hether suppressors constitute 'arms' is an issue of first impression in [this] circuit." *Id.* at 5. Meanwhile, suppressors are highly popular in the United States, with millions of them owned by law-abiding Americans. The reason for their popularity is plain: they reduce the sound of a firearm and therefore protect the hearing of individuals and those around them when a firearm is used for lawful purposes such as training, self-defense, or hunting. Indeed, the Government itself has described suppressors as "the *only* potentially effective noise control method to reduce . . . noise exposure from gunfire." Lila Chen & Scott E. Brueck, *Noise & Lead Exposures at an Outdoor Firing Range – California* at 5, NAT'L INST. OCCUPATIONAL SAFETY & HEALTH (Sept. 2011), https://perma.cc/6ED7-E99T (emphasis added).

The broader question of whether the panel was right that "firearm accessories" categorically are not protected by the Second Amendment, Op. at 6, is likewise pressing and important. If left to stand, the panel's broadly stated rule could have the extraordinary effect of permitting the Government to ban, for example, ammunition magazines, adjustable stocks, sights, braces, and other items that promote the safe

and effective use of firearms, so long as the Government could show that the item in question is not strictly "necessary" to the use of a firearm.

There also is a divide within this Court on the answer to this important question. The panel in this case held that accessories are not protected, while Judge Willett concurring in a different case reasoned that the use of "accessories that make an otherwise lawful weapon *safer*" likely is "protected Second Amendment 'conduct.' " *Mock v. Garland*, 75 F.4th 563, 588 (5th Cir. 2023) (Willett, J., concurring) (quoting *Bruen*, 597 U.S. at 24). The Court should grant review to give the full Court the opportunity to resolve the disagreement on this important issue and to bring this Court's caselaw in line with Supreme Court precedent.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ......................................................i

RULE 40 STATEMENT ...................................................................... iii

TABLE OF AUTHORITIES ................................................................vii

ISSUES MERITING EN BANC REVIEW ..............................................1

STATEMENT ...................................................................................1

    I.    Background and Procedural History....................................1

    II.    The Panel Decision ..............................................................4

REASONS FOR GRANTING REHEARING EN BANC ......................6

    I.    The panel's categorical rule exempting "firearm accessories" from Second Amendment protection is contrary to the Supreme Court's Second Amendment precedents and the Second Amendment's plain text ........................................................................6

    II.    This case presents exceptionally important questions .......................10

CONCLUSION ...............................................................................11

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                              **<u>Page</u>**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
    910 F.3d 106 (3d Cir. 2018) ............................................................7

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) .............................................................. iii, 6

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ...........................................................9

*Luis v. United States*,
    578 U.S. 5 (2016) ...........................................................................9

*Mock v. Garland*,
    75 F.4th 563 (5th Cir. 2023) ...........................................................v

*New York State Rifle & Pistol Ass'n v. Bruen*,
    597 U.S. 1 (2022) ................................................................ iii, 6

*United States v. Cox*,
    906 F.3d 1170 (10th Cir. 2018) ...................................................5, 8

*United States v. McCartney*,
    357 F. App'x 73 (9th Cir. 2009) ..................................................5, 8

*United States v. Rahimi*,
    602 U.S. 680 (2024) ..................................................................... iii

*United States v. Saleem*,
    No. 23-4693, 2024 WL 5084523 (4th Cir. Dec. 12, 2024) .........................5, 8

**<u>Constitutional Provisions, Codes, and Statutes</u>**

U.S. Const. amend. II. ............................................................6

18 U.S.C. § 921(a)(3) .............................................................7

## Other Authorities

Matthew P. Branch, *Comparison of Muzzle Suppression and Ear-Level Hearing Protection in Firearm Use*, 144(6) OTOLARYNGOL HEAD NECK SURG. 950 (2011) ............................................................................................... 3

Lila Chen & Scott E. Brueck, *Noise & Lead Exposures at an Outdoor Firing Range – California*, NAT'L INST. OCCUPATIONAL SAFETY & HEALTH (Sept. 2011), https://perma.cc/6ED7-E99T ............................................................ iii

Brian J. Filgor, *Prevention of Hearing Loss from Noise Exposure*, BETTER HEARING INST. (2011), https://perma.cc/TE5F-4PU8 .................................... 1

*Firearms Commerce in the United States: Annual Statistical Update 2021*, BATFE (2021), https://perma.cc/9FXV-62FU ............................................... 4

Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second Amendment*, 46 CUMB. L. REV. 33 (2016) ................................... 2

Glenn Kessler, *Are firearms with a silencer 'quiet'?*, WASH. POST (Mar. 20, 2017), https://perma.cc/757W-YHUF ................................................................. 2, 3

Edward Lobarinas, et al., *Differential effects of suppressors on hazardous sound pressure levels generated by AR-15 rifles: Considerations for recreational shooters, law enforcement, and the military*, 55 INT'L J. AUDIOLOGY S59 (2015) ............................................................................................... 3

*National Firearms Commerce and Trafficking Assessment: Firearms in Commerce*, BATFE (May 5, 2022), https://perma.cc/LZ55-JJ8V .................................... 4

*Noise and Occupational Hearing Loss*, NAT'L INST. OCCUPATIONAL SAFETY & HEALTH, https://perma.cc/Q47D-LJPU (last visited Mar. 3, 2025) ............ 2, 3

*Noise Sources and Their Effects*, PURDUE UNIV., https://perma.cc/5T4B-5JC3 (last visited Mar. 3, 2025) ................................ 2

## ISSUES MERITING EN BANC REVIEW

1. Whether firearm suppressors are entitled to Second Amendment protection.

2. Whether the Second Amendment categorically excludes "firearm accessories" from its reach.

## STATEMENT

### I.    Background and Procedural History

George Peterson operated a firearm business out of his home. After a law enforcement raid on his home and place of business, he was indicted for possession of an unregistered suppressor under 26 U.S.C. §§ 5841, 5861(d), and 5871. Peterson pleaded guilty to possessing an unregistered suppressor.  As relevant to this petition, Peterson moved to dismiss his indictment, arguing that the NFA's prohibition on unregistered firearm suppressors violates the Second Amendment to the United States Constitution.

Firearm suppressors are specifically designed to reduce the concussive force and volume of sound produced by a firearm, which helps to prevent ear damage for those near a firearm when it is fired. *See* Brian J. Filgor, *Prevention of Hearing Loss from Noise Exposure* at 8, BETTER HEARING INST. (2011), https://perma.cc/TE5F-4PU8. Sound intensity is measured in decibels, and it denotes the amount of pressure a noise produces on a listener's eardrum. Decibels operate on a logarithmic scale, so

that a sound that is just three decibels louder produces twice the pressure on a listener's eardrum, and a ten-decibel difference denotes a sound that produces ten times as much pressure. In terms of sound perception, a ten-decibel increase is perceived as a doubling of volume. That means, for example, that a 70-decibel sound, like a vacuum cleaner, is perceived as only half as loud as an 80-decibel sound like a garbage disposal. *Noise Sources and Their Effects*, PURDUE UNIV., https://perma.cc/5T4B-5JC3 (last visited Mar. 3, 2025).

"[D]espite movie fantasies[,] a noise suppressor reduces decibels, but does not actually 'silence' the discharge of a firearm." Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second Amendment*, 46 CUMB. L. REV. 33, 36 (2016) ("Halbrook"). Suppressed firearms are, in fact, still quite "loud." *Id.* at 35. For example, the 127 decibels generated by a suppressed 9mm pistol are comparable to a firecracker or an ambulance siren, Filgor, *supra*, at 8, and the 132 decibels generated by a suppressed AR-15 rifle are comparable to a jackhammer, *see* Glenn Kessler, *Are firearms with a silencer 'quiet'?*, WASH. POST (Mar. 20, 2017), https://perma.cc/757W-YHUF.

While suppressed firearms are loud, they are not as loud as their unsuppressed counterparts; in general, a suppressor will reduce sound intensity by about 30 decibels. *See id*. Given that the CDC warns that even momentary exposure to sounds over 140 decibels risks hearing loss, *Noise and Occupational Hearing Loss*, NAT'L

INST. OCCUPATIONAL SAFETY & HEALTH, https://perma.cc/Q47D-LJPU (last visited Mar. 3, 2025), the sound reduction produced by suppressors plainly is an important component of the safe use of firearms.

To be sure, personal protective equipment like earplugs or earmuffs can be worn to mitigate hearing damage. *See* Kessler, *supra*. But suppressors make the use of firearms safer for several reasons. As a practical matter, suppressors are significantly more effective than personal protective equipment, which can more easily be used improperly. *See* Matthew P. Branch, *Comparison of Muzzle Suppression and Ear-Level Hearing Protection in Firearm Use*, 144(6) OTOLARYNGOL HEAD NECK SURG. 950, 951 (2011) (finding that across 20 published studies of noise suppression "laboratory NRRs [Noise Reduction Ratings] consistently overstated the real-world NRRs by 140% to 2000%").

In addition to their greater efficacy, suppressors bring other advantages in the safe use of firearms. First, suppressors protect *other people*, not just the shooter, by reducing sound intensity at the source. Indeed, suppressors can be even more effective for bystanders than they are for shooters. *See* Edward Lobarinas, et al., *Differential effects of suppressors on hazardous sound pressure levels generated by AR-15 rifles: Considerations for recreational shooters, law enforcement, and the military*, 55 INT'L J. AUDIOLOGY S59, S63 (2015) (showing greater reduction in decibels one meter to the left of the muzzle than at the shooter's right or left ear).

Second, a firearm can be stored with a suppressor attached so that an individual's hearing is protected in the event that the firearm is needed to repel an attacker but there is no time to locate or equip earplugs or muffs. Third, suppressors can also aid in recoil management, ensuring that individuals can more safely put follow up shots on target, especially in self-defense scenarios.

Given their efficacy in making firearm use safe and effective, it is unsurprising that suppressors are exceedingly popular in the United States. They are legal to possess in the vast majority of states, and as of 2021 Americans had registered 2.6 million of them with ATF, *Firearms Commerce in the United States: Annual Statistical Update 2021* at 16, BATFE (2021), https://perma.cc/9FXV-62FU, a number that certainly has increased substantially since then.

## II.     The Panel Decision

The panel affirmed the district court's denial of Peterson's motion to dismiss his indictment on Second Amendment grounds. Peterson principally argued "that the NFA's suppressor-registration requirement unconstitutionally burdens his Second Amendment rights." Op. at 4. The panel rejected that argument because it "conclude[d] that suppressors are not 'Arms' within the Second Amendment's purview." *Id.*

In stating the applicable test, the panel began by acknowledging that "[t]he Second Amendment extends, *prima facie*, to all instruments that constitute bearable

arms, even those that were not in existence at the time of the founding." *Id.* at 5 (quoting *Bruen*, 597 U.S. at 28). But the panel went on to say that "to constitute an 'arm,' the object in question must be a weapon." *Id.*

The panel acknowledged that "[w]hether suppressors constitute 'arms' is an issue of first impression in [this] circuit," and observed that "so far as we can tell, every court to have addressed it has decided the question in the negative." *Id.* The panel cited Ninth and Tenth Circuit opinions that predated *Bruen*, an unpublished Fourth Circuit opinion, and two opinions from district courts in other Circuits. *See Id.* at 5–6 (citing *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018); *United States v. Saleem*, No. 23-4693, 2024 WL 5084523, at *2 (4th Cir. Dec. 12, 2024); *United States v. McCartney*, 357 F. App'x 73, 76 (9th Cir. 2009); *United States v. Cooperman*, No. 22-CR-146, 2023 WL 4762710, at *1–2 (N.D. Ill. July 26, 2023); *United States v. Villalobos*, No. 3:19-CR-00040-DCN, 2023 WL 3044770, at *11–12 (D. Idaho Apr. 21, 2023)).

The panel rejected Peterson's argument that "suppressors are 'an integral part of a firearm' " in the same way that bullets are because, it reasoned, "[a] suppressor, by itself, is not a weapon." *Id.* at 6. Rather, the panel "agree[d] with the Tenth Circuit that a suppressor 'is a firearm accessory . . . not a weapon.' " *Id.* (quoting *Cox*, 906 F.3d at 1186). "And while possession of firearms themselves is covered by the plain

text of the Second Amendment," the panel held, "possession of firearm accessories

is not." *Id.*

## REASONS FOR GRANTING REHEARING EN BANC

**I.     The panel's categorical rule exempting "firearm accessories" from Second Amendment protection is contrary to the Supreme Court's Second Amendment precedents and the Second Amendment's plain text.**

The text of the Second Amendment states: "A well regulated Militia, being

necessary to the security of a free State, the right of the people to keep and bear

Arms, shall not be infringed." U.S. CONST. amend. II.

The Supreme Court has articulated the applicable test for determining what

conduct is protected by the Second Amendment. Under *Bruen*, the first task when

confronting a Second Amendment claim is to determine whether "the Second

Amendment's plain text covers an individual's conduct." 597 U.S. at 17. An "arm"

includes "*any thing* that a man wears for his defence, or takes into his hands, or useth

in wrath to cast at or strike another." *Heller*, 554 U.S. at 581 (quoting TIMOTHY

CUNNINGHAM, 1 A NEW AND COMPLETE LAW DICTIONARY (1764)) (emphasis added).

This definition includes "*all* instruments that *constitute* bearable arms, even those

that were not in existence at the time of the founding." *Bruen*, 597 U.S. at 28 (quoting

*Heller*, 554 U.S. at 582) (emphasis added).

Contrary to the panel's decision, the Supreme Court has not adopted any

categorical carve-out for "firearm accessories," assuming that label can even apply

to component parts that support the safe and effective function of a firearm. Rather, under the Supreme Court's binding interpretation of the Second Amendment, a firearm equipped with a suppressor indisputably is an arm, and therefore possessing such a firearm indisputably is conduct covered by the plain text of the Second Amendment.

If the Second Amendment is to mean anything, then an "arm" must include not just complete firearms but also component parts that function integrally with the firearm. Of course, the panel was right that a suppressor, by itself, is not capable of expelling a projectile. *See* Op. at 6. But *no* part of a firearm can, by itself, expel a projectile or do any casting or striking. A functioning firearm is a collection of component parts. Yet regulation of other components that support the safe and effective use of a firearm—like an ammunition magazine, a rifle barrel, a set of sights, or even a trigger or firing pin—would regulate the use of a firearm. *See, e.g.*, *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 116 (3d Cir. 2018) (holding that magazine are "arms"). So too here. Regulation of a component part is not only a regulation on that part in the abstract or in a vacuum. It is a regulation of the keeping and bearing of the firearms that function *with* that component part.

This makes good sense. After all, if suppressors were simply metal tubes not capable of functioning with firearms, it would make little sense for the National

Firearms Act to regulate suppressors through a registration regime. It is notable too that federal law explicitly labels suppressors as "firearms." *See, e.g.*, 18 U.S.C. § 921(a)(3). To be sure, a statutory definition cannot change the meaning of the Constitution. But this statutory evidence at least demonstrates that Congress and the Executive's basis for regulating these items under the federal firearm laws—and prosecuting individuals for unlicensed possession of them—is because of the way they operate as a component of a firearm.

The panel's cited out-of-Circuit authority does not change this conclusion. Of course, none of those opinions are binding on this Court. Nor are they persuasive. The Ninth and Tenth Circuit opinions predated *Bruen*, and so did not apply its test to determine whether suppressors are afforded any Second Amendment protection. In any case, the Tenth Circuit opinion on which the panel principally relied provided very little reasoning. The court simply concluded that "[a] silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence')." *Cox*, 906 F.3d at 1186. The Ninth Circuit, for its part, wrongly concluded—without any citation to empirical data or support in the record—that "[s]ilencers . . . are not 'typically possessed by law-abiding citizens for lawful purposes,' " and "are even more dangerous and unusual than machine guns." *McCartney*, 357 F. App'x at 76 (quoting *Heller*, 570 U.S. at 625). The unpublished Fourth Circuit opinion, which is not binding even in that Circuit, applied a test that finds no basis in Supreme Court

8

precedent: it hinged Second Amendment protection on whether an item itself is "capable of casting a bullet" and a "key item for the arm's upkeep." *Saleem*, 2024 WL 5084523, at *2.

Contrary to these non-binding precedents, the plain text of the Second Amendment is implicated because a regulation of suppressors cannot be viewed in isolation—it effectively is a regulation of suppressed firearms, which indisputably are arms. And even if that were not so, suppressors at least facilitate the exercise of the Second Amendment right. For this reason too, it was error to hold that suppressors are entitled to no constitutional protection. Constitutional rights "implicitly protect those closely related acts necessary to their exercise." *Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment). For this reason, the Seventh Circuit in *Ezell v. City of Chicago* held that, even though the Second Amendment makes no mention of firing ranges or practicing with arms, "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective." 651 F.3d 684, 704 (7th Cir. 2011). Suppressors are similar to firing ranges in that they facilitate the safe and effective exercise of the Second Amendment right. Just as a firing range provides a place in which the discharge of a firearm is carefully controlled, preventing damage to property or injury to the user and to bystanders, a suppressor reduces the sound

produced by firing a firearm to a much safer level, permitting the right to be exercised with a reduced risk to one's hearing. In fact, suppressors are key to making firing ranges themselves functional, since those are locations where the sounds of gunfire are concentrated. The noise suppression enabled by suppressors is crucial to realizing the benefits of the "training and practice" that the Seventh Circuit has already held is protected by the Second Amendment.

## II.      This case presents exceptionally important questions.

This case asks what constitutional protection, if any, should be afforded to the exercise of an asserted fundamental right. This question is undoubtedly important to the law and to everyday people seeking clarity about whether their conduct is constitutionally protected.

To further heighten the importance of the issues raised, the case presents the question in the context of one of the most common, popular, and safe firearm components in the United States. As explained above, millions of suppressors are possessed by law-abiding Americans and are used for the lawful purposes of preventing hearing damage to the firearm user and others around them, which facilitates the safety and efficacy of firearm use.

Finally, because the panel's opinion went beyond suppressors, so too do the implications of this case. The panel laid down a broadly stated rule that all firearm "accessories" are due *no* Second Amendment protection. Op. at 6. If that ruling were

to stand, the Government could ban all manner of integral components of firearms, effectively rendering a nullity of the fundamental Second Amendment right under the guise of banning "accessories." All the while, the government could continue to prosecute individuals like Peterson on the assertion that such parts *are* firearms. The Second Amendment's protections are not so flimsy. This Court should reconsider the panel's opinion and provide clarity about the important question whether commonly used suppressors are entitled to constitutional protection.

## CONCLUSION

The Court should grant the petition for rehearing en banc.

Dated: March 6, 2025                    Respectfully Submitted,

                                        /s/ David H. Thompson
Richard J. Richthofen, Jr.              David H. Thompson
3900 Canal Street                       Peter A. Patterson
New Orleans, Louisiana 70119            William V. Bergstrom
Office: (504) 899-7949                  Athanasia O. Livas
Facsimile: (504) 899-2518               COOPER & KIRK, PLLC
Email: rick@rjrlawfirm.com              1523 New Hampshire Ave., N.W.
                                        Washington, D.C., 20036
Cody J. Wisniewski                      Telephone: (202) 220-9600
FPC ACTION FOUNDATION                   Facsimile: (202) 220-9601
5550 Painted Mirage Rd.                 dthompson@cooperkirk.com
Las Vegas, NV 89149                     ppatterson@cooperkirk.com
Telephone: (615) 955-4306               wbergstrom@cooperkirk.com
Facsimile: (615) 334-0463               alivas@cooperkirk.com
cwi@fpcafhq.org

*Counsel for Defendant-Appellant George Peterson*

11

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 40(d)(3) because this brief contains 2,467 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman, 14 pt. Font.

Dated:  March 6, 2025

/s/ David H. Thompson
David H. Thompson

*Counsel for Defendant-Appellant
George Peterson*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit on March 6, 2025, by using the CM/ECF system and that service was accomplished on all counsel of record by the appellate CM/ECF system.

/s/ David H. Thompson
David H. Thompson

*Counsel for Defendant-Appellant*
*George Peterson*