**No. 24-30043**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

GEORGE PETERSON,

*Defendant-Appellant.*

Petition from the United States District Court
for the Eastern District Of Louisiana
Case No. 22-CR-231-1

## BRIEF OF FIREARMS REGULATORY ACCOUNTABILITY COALITION, SILENCER SHOP, B&T USA, LLC, PALMETTO STATE ARMORY, LLC, AND SB TACTICAL AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT'S PETITION FOR REHEARING EN BANC

Stephen J. Obermeier
*Counsel of Record*
Michael D. Faucette
Jeremy J. Broggi
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
SObermeier@wiley.law

March 13, 2025

## CERTIFICATE OF INTERESTED PERSONS

No. 24-30043; *United States v. Peterson*

The undersigned counsel of record certifies that, in addition to the persons and entities listed in Defendant-Appellant's Certificate of Interested Persons, the following persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal:

*Amicus Curiae* B&T USA, LLC ("B&T"). B&T has no parent corporation, and no publicly held company has any ownership interest in B&T.

*Amicus Curiae* Firearms Regulatory Accountability Coalition, Inc. ("FRAC"). FRAC has no parent corporation, and no publicly held company has any ownership interest in FRAC.

*Amicus Curiae* Hill Country Class 3, LLC d/b/a Silencer Shop ("Silencer Shop"). Silencer Shop has no parent corporation, and no publicly held company has any ownership interest in Silencer Shop.

*Amicus Curiae* NST Global, LLC d/b/a SB Tactical ("SB Tactical"). SB Tactical has no parent corporation, and no publicly held company has any ownership interest in SB Tactical.

*Amicus Curiae* Palmetto State Armory, LLC ("PSA"). PSA is wholly owned by JJE Capital Holdings, LLC, a holding company. No publicly held company has any ownership interest in JJE Capital Holdings, LLC.

Counsel for *amici curiae*, Stephen J. Obermeier, Michael D. Faucette, Jeremy J. Broggi, and Boyd Garriott.

Dated: March 13, 2025

*/s/ Stephen J. Obermeier*
Stephen J. Obermeier
*Counsel of Record for* Amici Curiae

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................ i

Table of Authorities ............................................................ iv

Introduction And Interest Of *Amici Curiae* ..................................1

Argument.........................................................................3

    I.    The Second Amendment Protects Firearms Accessories Because They Facilitate Lawful Armed Conduct.........................................3

    II.   The Panel's Decision Threatens To Undermine The Second Amendment's Protections Through Piecemeal Regulation. .................7

Conclusion .....................................................................12

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Andrews v. State*,
  50 Tenn. 165 (1871)............................................................5

*Caetano v. Massachusetts*,
  577 U.S. 411 (2016)..........................................................11

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)................................................2, 3, 5, 6, 11

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ................................................6

*Firearms Regulatory Accountability Coalition, Inc. v. Garland*,
  112 F.4th 507 (8th Cir. 2024) ...............................................1

*Hanson v. District of Columbia*,
  671 F. Supp. 3d 1, 10 (D.D.C. 2023)....................................9

*Luis v. United States*,
  578 U.S. 5 (2016)................................................................5

*Mock v. Garland*,
  75 F.4th 563 (5th Cir. 2023) ........................................6, 7, 10

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
  597 U.S. 1 (2022)..................................................2, 4, 5, 6, 11

*Ocean State Tactical, LLC v. Rhode Island*,
  646 F. Supp. 3d 368 (D.R.I. 2022) .......................................9

*Reese v. ATF*,
  127 F.4th 583 (5th Cir. 2025) ...............................................5

*United States v. Berger*,
  715 F. Supp. 3d 676 (E.D. Pa. 2024)....................................9

*United States v. Comeaux*,
  2024 WL 115929 (W.D. La. Jan. 10, 2024) ......................6, 9

*United States v. Miller*,
  307 U.S. 174 (1939)...................................................................3

*United States v. Peterson*,
  127 F.4th 941 (5th Cir. 2025) .............................................2, 4, 5, 7, 8

*Wrenn v. District of Columbia*,
  864 F.3d 650 (D.C. Cir. 2017)...............................................11

**Statutes And Constitutions**

Fed. R. App. P. 29(a)(4)(E)........................................................1

U.S. Const. amend II................................................................3

**Other Authorities**

*590 Shockwave*, Mossberg, https://tinyurl.com/yc26sv5u.........................9

ATF, Firearms Commerce in the United States: Annual Statistical
  Update 2021 (May 2021), https://tinyurl.com/2zavsan8.....................4

Brad Miller, *Who Needs a Barrel*, Guns Magazine (2022),
  https://tinyurl.com/6c9f77b6 ............................................8

*Gun Barrels: How Do They Work?*, NRA Family (Oct. 4, 2017),
  https://tinyurl.com/428jjbrm ...........................................8

Second Lieutenant Travis R. Stevens-White, *Applying Combatant
  Status Under the International Law of Armed Conflict to the
  Domestic Militia System of the United States*, 225 Mil. L. Rev. 486
  (2017)....................................................................3

*Sights and Safeties*, Texas Parks & Wildlife,
  https://tinyurl.com/3adf2j27 ...........................................7

Stephen Halbrook, *Second Amendment Roundup: 5th Circuit holds
  suppressors not to be protected 'arms,'* The Volokh Conspiracy
  (Feb. 17, 2025), https://tinyurl.com/5e2vv34a ..........................4

Stephen P. Halbrook, *Firearm Sound Moderators: Issues of
  Criminalization and the Second Amendment*, 46 Cumb. L. Rev. 33
  (2016)..............................................................4, 6, 10

*The Truth About Integral Suppressors*, Thril (June 14, 2018),
     https://tinyurl.com/5f8waujc ...................................................................................7

U.S. Dep't of Army, Report R-1896, Silencers: Principles and
     Evaluations 1 (Aug. 1968) ....................................................................................4

## INTRODUCTION AND INTEREST OF *AMICI CURIAE*[1]

*Amicus curiae* Firearms Regulatory Accountability Coalition ("FRAC") serves as the premiere national trade association representing U.S. and international firearms manufacturers, importers, and innovators on regulatory and legislative issues impacting the industry in the United States. *Amici curiae* Silencer Shop, B&T USA, Palmetto State Armory, and SB Tactical are members of FRAC that collectively design, manufacture, and sell firearms and firearms accessories.

FRAC regularly sues to vindicate its members' interests when the Government oversteps its authority to regulate firearms and firearms accessories. *See, e.g.*, *FRAC v. Garland*, 112 F.4th 507 (8th Cir. 2024) (holding firearms regulation unlawful). And FRAC and its members have repeatedly filed *amicus* briefs in this Court in furtherance of that mission. *See, e.g.*, *Cargill v. Garland*, No. 20-51016, Doc. 516416467 (5th Cir.) (filed Aug. 2, 2022) (en banc) (bump stocks); *Mock v. Bondi*, No. 24-10743, Doc. 39 (5th Cir.) (filed Nov. 13, 2024) (pistol stabilizing braces).

As a commercial trade association, FRAC typically does not participate in criminal cases. But this case is different. The panel's overly broad reasoning may

---

[1] No counsel for any party authored this brief in whole or in part. No entity or person, aside from *amici curiae*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of the brief. *See* Fed. R. App. P. 29(a)(4)(E). All parties have consented to the filing of this brief.

carry implications far beyond the innocence or guilt of Mr. Peterson. The panel held that "firearms accessories"—here, suppressors—are not protected by the Second Amendment because they are not "*necessary* to a firearm's operation." *United States v. Peterson*, 127 F.4th 941, 946-47 (5th Cir. 2025) (emphasis in original). FRAC members, including the members participating here as *amici*, manufacture and sell firearms and firearms accessories—including suppressors. The panel's opinion threatens to wrongly remove their products and customers from the protections of the Second Amendment. *Amici* thus have a significant interest in this case.

The panel's Second Amendment holding conflicts with Supreme Court precedent and threatens to dramatically reduce the Second Amendment's protections. The Supreme Court defines "Arms" to include "modern instruments that facilitate armed self-defense," *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 28 (2022), as well as other lawful armed conduct including "hunting" and service in "the militia," *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008). The panel's narrower, strict-necessity test would allow the Government to outlaw nearly every firearm component—for example, sights, barrels, shoulder stocks, and magazines—because, while important and helpful, these parts are not necessary to the operation of a firearm. This view of the Second Amendment would render it vulnerable to death by a thousand cuts.

For these reasons, this case presents a question of exceptional importance, and *amici* respectfully urge the Court to grant Appellant's petition for rehearing en banc.

## ARGUMENT

### I. THE SECOND AMENDMENT PROTECTS FIREARMS ACCESSORIES BECAUSE THEY FACILITATE LAWFUL ARMED CONDUCT.

The Second Amendment guarantees the right of every American to "keep and bear Arms." U.S. Const. amend II.  A "purpose" for the Amendment's adoption was "to prevent elimination of the militia." *Heller*, 554 U.S. at 599.[2]  But that was not "the only reason Americans valued the ancient right"; they also deemed it critically "important for self-defense and hunting." *Heller*, 554 U.S. at 599.  The right was thus not just an end in itself but also a means to protect all forms of lawful armed conduct.

The Supreme Court has held that "Arms" protected by the Second Amendment are instruments that facilitate this lawful conduct.  In *Heller*, the Supreme Court explained that "Arms" include not only "weapons of offence," but also "any thing that a man … takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581.  Expanding on this capacious definition, the Supreme Court in *Bruen* explained that "even though the Second Amendment's

---

[2] *See also United States v. Miller*, 307 U.S. 174, 178-79 (1939); Second Lieutenant Travis R. Stevens-White, *Applying Combatant Status Under the International Law of Armed Conflict to the Domestic Militia System of the United States*, 225 Mil. L. Rev. 486, 488-90 (2017).

definition of 'arms' is fixed according to its historical understanding, that general definition covers *modern instruments that facilitate armed self-defense*." *Bruen*, 597 U.S. at 28 (emphasis added).

"Arms" thus encompass firearms accessories like suppressors because they exist to facilitate armed conduct. Indeed, suppressors "reduce noise, recoil, and flash, and many gun owners utilize them to protect their hearing, be conscientious of neighbors, and avoid spooking game." *Peterson*, 127 F.4th at 946 n.5 (cleaned up); *see also* Pet. 3-4. Suppressors also reduce the need for "earplugs and earmuffs," which "can cause accidents" by "inhibit[ing] one's ability to hear range commands," and environmental noise (e.g., a game animal or an intruder in one's home). *See* Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second Amendment*, 46 Cumb. L. Rev. 33, 34 (2016).[3]

These benefits have made suppressors ubiquitous. Americans have legally registered more than *2.6 million* of them. ATF, Firearms Commerce in the United States: Annual Statistical Update 2021, at 16 (May 2021), https://tinyurl.com/2zavsan8. Further, federal crime data shows suppressors "are very rarely used in" crimes. Stephen Halbrook, *Second Amendment Roundup: 5th*

---

[3] *See also* U.S. Dep't of Army, Report R-1896, Silencers: Principles and Evaluations 1 (Aug. 1968) (explaining that suppressors improve "aim" and reduce the "ear shattering effects" of firearms).

*Circuit holds suppressors not to be protected 'arms,'* The Volokh Conspiracy (Feb. 17, 2025) (quoting ATF report), https://tinyurl.com/5e2vv34a.

Even the panel agreed that "a suppressor might prove useful to one casting or striking at another." *Peterson*, 127 F.4th at 946. Although the panel resisted the conclusion that should have followed, its observation confirms entitlement to Second Amendment protection. Because suppressors are lawfully used "to cast at or strike another," *Heller*, 554 U.S. at 581, and to "facilitate armed self-defense" and other lawful purposes, *Bruen*, 597 U.S. at 28, they are protected "Arms."[4]

Possession of suppressors is also protected as Second Amendment "conduct." *Bruen*, 597 U.S. at 24; *accord Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring) ("Constitutional rights … implicitly protect those closely related acts necessary to their exercise."). Protected conduct includes, for example, "the right to purchase" Arms. *Reese v. ATF*, 127 F.4th 583, 590 (5th Cir. 2025). This conduct also includes the right to "keep [Arms] in a state of efficiency for use … for all the ordinary purposes" of law-abiding citizens. *Andrews v. State*, 50 Tenn. 165, 178 (1871).

Possessing firearms accessories is protected Second Amendment conduct because it facilitates the right to keep and bear arms by making weapons more

---

[4] Of course, Arms may be more heavily regulated if they are "dangerous and unusual." *Bruen*, 597 U.S. at 21. Although the panel did not reach the issue, silencers are neither. *See supra*.

effective and "easier to use." *Heller*, 554 U.S. at 629.  As Judge Willett explained in the context of a different firearm accessory, "protected Second Amendment 'conduct' likely includes making common, safety-improving modifications to otherwise lawfully bearable arms." *Mock v. Garland*, 75 F.4th 563, 588 (5th Cir. 2023) (Willett, J., concurring) (citing *Bruen*).

The same goes for suppressors.  By making firearms safer and more effective for lawful applications, a suppressor "facilitate[s] armed" lawful conduct, *Bruen*, 597 U.S. at 28, and is a "common, safety-improving modification[ ]," *Mock*, 75 F.4th at 588 (Willett, J.); *see United States v. Comeaux*, 2024 WL 115929, at *2 n.1 (W.D. La. Jan. 10, 2024) (explaining that suppressors "significantly alter[ ] an important and defining characteristic of th[e] firearm").  Further, because a "*single shot* from a large caliber firearm, experienced at close range, may *permanently damage* your hearing," Halbrook, *supra*, 46 Cumb. L. Rev. at 33 (emphasis added) (quoting Dr. Brian J. Fligor of Harvard Medical School), suppressors facilitate safe, repeated firing that allows "law-abiding people to maintain proficiency in firearm use via marksmanship practice," *Ezell v. City of Chicago*, 651 F.3d 684, 695 (7th Cir. 2011).  Thus, not only are suppressors "Arms," but possessing a suppressor is protected Second Amendment conduct.

## II.    THE PANEL'S DECISION THREATENS TO UNDERMINE THE SECOND AMENDMENT'S PROTECTIONS THROUGH PIECEMEAL REGULATION.

The panel erred because it fashioned a more restrictive understanding of "Arms" than the one articulated by the Supreme Court.  It held that instruments qualify as "Arms" only when they are "necessary to a firearm's operation." *Peterson*, 127 F.4th at 947.  "Necessary," in the panel's view, means the ability to "transform an inoperable firearm into an operable one." *Ibid.*  Not only is that view incorrect, it renders the Second Amendment vulnerable to death by a thousand cuts.

Firearms operate as systems of parts.  Those parts are integrated into a cohesive whole that allows a user to safely and effectively fire the weapon.  Although any given individual component may not be literally "necessary" for the weapon's operation, that does not make it less of an "Arm."[5]  To hold otherwise would allow the Government to use piecemeal component regulations to retroactively ban, and prospectively dictate, the firearms available to the public—all without constitutional limit.  Such a test would render the Second Amendment a nullity.

Common examples illustrate the point.  First, consider sights—instruments that "allow the shooter to correctly align the barrel on the target." *Sights and Safeties*, Texas Parks & Wildlife, https://tinyurl.com/3adf2j27.  Sights make a gun much more accurate. *Ibid.*  "Accuracy, in turn, promotes safety." *Mock*, 75 F.4th at

---

[5]  In fact, some suppressors are "built directly into the rifle barrel." *See The Truth About Integral Suppressors*, Thril (June 14, 2018), https://tinyurl.com/5f8waujc.

588 (Willett, J.). However, a sight, "by itself, is not a weapon." *See Peterson*, 127 F.4th at 946. And sights are not "necessary to a firearm's operation" because a gun can be fired without one. *See Peterson*, 127 F.4th at 947. Thus, under the panel's holding, sights would "not [be] protected by … the Second Amendment" and could be criminalized without limit. *See id.* at 947.

Next, consider barrels. Virtually every firearm uses a barrel—and for good reason: "In rifles and handguns, the barrel is the single most important factor in determining accuracy." *Gun Barrels: How Do They Work?*, NRA Family (Oct. 4, 2017), https://tinyurl.com/428jjbrm. However, guns "can fire even with no barrel"—albeit with adverse impacts on accuracy. Brad Miller, *Who Needs a Barrel*, Guns Magazine (2022), https://tinyurl.com/6c9f77b6. Thus, a barrel does not "transform an inoperable firearm into an operable one." *See Peterson*, 127 F.4th at 947. So, under the panel's reading, the Government could ban barrels, and the Second Amendment would have no role to play. Indeed, some firearms are manufactured with suppressors that are inseparable from the firearm's barrel. *See supra* note 5.

It is the same with shoulder stocks. Most long guns—think shotguns and rifles—utilize shoulder stocks. The reason is simple: the stock allows the user to more safely and effectively fire larger-caliber ammunition by absorbing the recoil in his shoulder. However, it is possible to operate such guns without stocks. Indeed,

there are firearms on the market that shoot shotgun shells without shoulder stocks. *See, e.g.*, *590 Shockwave*, Mossberg, https://tinyurl.com/yc26sv5u. Thus, again, under the panel opinion, stocks would not be entitled to any Second Amendment protections.

These examples are not merely hypothetical. A district court that employed a strict-necessity test similar to the panel held that large "detachable magazines" are not "Arms" because "a firearm can fire bullets without" them. *Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368, 386-88 (D.R.I. 2022). But, as other courts have correctly recognized, that flawed "logic … would allow [the Government] to ban *all* magazines … because a firearm technically does not require *any* magazine to operate; one could simply fire the single bullet in the firearm's chamber." *Hanson v. District of Columbia*, 671 F. Supp. 3d 1, 10 (D.D.C. 2023) (emphasis in original), *aff'd*, 120 F.4th 223 (D.C. Cir. 2024). Thus, under the panel's mistaken reasoning, the Government could limit firearm ownership to single-shot weapons—eviscerating much of the firearm market in America today—without even *implicating* the Second Amendment.[6]

---

[6] *See also, e.g.*, *Comeaux*, 2024 WL 115929, at *2 n.1 (declining to "limit the scope of the Second Amendment's protections" through interpretation of "Arms" that "could exclude grips, sights, stocks, and other parts of a firearm from Second Amendment protection."); *United States v. Berger*, 715 F. Supp. 3d 676, 702 (E.D. Pa. 2024) (agreeing that similar strict-necessity test excludes "grips, stocks, optics, [large] magazines, and barrel attachments").

These examples show that the panel opinion cannot be correct. If the Government is free to criminalize sights, barrels, stocks, and magazines, then it could overnight make it illegal to own virtually every firearm in the country without constitutional scrutiny. Indeed, ATF has previously tried to backdoor firearm bans through accessory regulations. In 2023, it tried to impose regulations on pistol stabilizing braces—a popular firearms accessory—to retroactively criminalize *millions* of unregistered "pistol-brace-equipped firearms." *Mock*, 75 F.4th at 576, 581-82 (observing "low estimate" of "3 million firearms" affected). Although this Court and others rightly blocked ATF's unlawful effort, *see, e.g.*, *id.* at 588, this saga shows that the Government is willing to regulate *accessories* as a means to retroactively outlaw *firearms* owned by millions of law-abiding Americans. Surely the Second Amendment has a role to play in protecting gunowners from such efforts.

Further, giving the Government free rein to regulate each individual piece of a firearm effectively gives it the ability to prospectively dictate the weapons available to the public. For example, a ban on long barrels—which are not necessary to fire a gun—would, for all practical purposes, limit the market to handguns. *Cf.* Halbrook, *supra*, 46 Cumb. L. Rev. at 69 ("Could Congress ban firearms with longer barrels because they make less noise, and require shorter barrels because they are louder?"). Yet that would run afoul of the Supreme Court's teaching that the Government generally may not "ban the possession of [one type of gun] so long as

the possession of other firearms … is allowed." *Heller*, 554 U.S. at 629; *see also Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, Thomas, JJ., concurring) (rejecting interpretation that would leave "a State … free to ban all weapons except" those it prefers (emphasis omitted)).

It would be no answer to claim that accessories like sights, barrels, stocks, and magazines are protected because they have more *utility* than suppressors. For one, that view gives short thrift to the numerous benefits of suppressors. *See supra* Section I. But even more fundamentally, courts applying such a test would be engaged in the kind of "judge-empowering 'interest-balancing inquiry'" that the Supreme Court has expressly rejected in the Second Amendment context. *Bruen*, 597 U.S. at 22; *see also Wrenn v. District of Columbia*, 864 F.3d 650, 664 (D.C. Cir. 2017) ("the *Heller* Court … dispensed with tiers of scrutiny in striking down a ban on possession"). Just as courts may not "decide on a case-by-case basis whether the right is *really worth* insisting upon," *Bruen*, 597 U.S. at 23 (emphasis in original), neither may courts ask whether a firearm component is *really necessary* enough to warrant Second Amendment protection.

The Court should grant the petition to employ the proper Second Amendment analysis: If a firearm accessory facilitates lawful armed conduct, then it is part of the "Arms" protected by the Second Amendment. Suppressors plainly so qualify.

11

## CONCLUSION

In light of the foregoing, this Court should grant the petition.

Dated: March 13, 2025

Respectfully submitted,

*/s/ Stephen J. Obermeier*
Stephen J. Obermeier
*Counsel of Record*
Michael D. Faucette
Jeremy J. Broggi
Boyd Garriott
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
(202) 719-7000
SObermeier@wiley.law

*Counsel for* Amius Curiae

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because this brief contains 2,581 words.

This brief also complies with the typeface requirements of Fifth Circuit Rules 29.2 and 32.1 and Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Fifth Circuit Rules 29.2 and 32.2 and Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced 14-point Times New Roman font.

Dated: March 13, 2025

*/s/ Stephen J. Obermeier*
Stephen J. Obermeier
*Counsel of Record for* Amici Curiae

## CERTIFICATE OF SERVICE

I certify that on March 13, 2025, I caused the foregoing to be served upon all counsel of record via the Clerk of Court's CM/ECF notification system.

Dated: March 13, 2025

*/s/ Stephen J. Obermeier*
Stephen J. Obermeier
*Counsel of Record for* Amici Curiae