No. 24-30043

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GEORGE PETERSON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

**BRIEF *AMICI CURIAE* OF GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, GUN OWNERS OF CALIFORNIA, TENNESSEE FIREARMS ASSOCIATION, TENNESSEE FIREARMS FOUNDATION, VIRGINIA CITIZENS DEFENSE LEAGUE, VIRGINIA CITIZENS DEFENSE FOUNDATION, GRASS ROOTS NORTH CAROLINA, RIGHTS WATCH INTERNATIONAL, HELLER FOUNDATION, AMERICA'S FUTURE, AND CONSERVATIVE LEGAL DEFENSE AND EDUCATION FUND IN SUPPORT OF DEFENDANT-APPELLANT'S PETITION FOR REHEARING EN BANC**

_____

John I. Harris III
Nashville, TN

Stephen D. Stamboulieh
Olive Branch, MS

March 13, 2025

Robert J. Olson*
William J. Olson
Jeremiah L. Morgan
WILLIAM J. OLSON, P.C.
370 Maple Ave. West, Ste. 4
Vienna, VA 22180-5615
(703) 356-5070
rob@wjopc.com

Case No. 24-30043

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

GEORGE PETERSON,
*Defendant-Appellant.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

United States of America, Plaintiff-Appellee.

George Peterson, Defendant-Appellant.

Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Tennessee Firearms Association, Tennessee

Firearms Foundation, Virginia Citizens Defense League, Virginia Citizens Defense Foundation, Grass Roots North Carolina, Rights Watch International, Heller Foundation, America's Future, and Conservative Legal Defense and Education Fund, *Amici Curiae*.

Robert J. Olson, William J. Olson, Jeremiah L. Morgan, John I. Harris III, and Stephen D. Stamboulieh are counsel for *Amici Curiae*.

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(c), and 5th Circuit Rule 28.2.1, it is hereby certified that *Amici Curiae* Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Tennessee Firearms Association, Tennessee Firearms Foundation, Virginia Citizens Defense League, Virginia Citizens Defense Foundation, Grass Roots North Carolina, Rights Watch International, Heller Foundation, America's Future, and Conservative Legal Defense and Education Fund are non-stock, nonprofit corporations, have no parent companies, and no person or entity owns them or any part of them.

 */s/ Robert J. Olson*
Robert J. Olson
Attorney of Record for *Amici Curiae*

iii

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES.................................................................. v

INTEREST OF THE *AMICI CURIAE*................................................. 1

STATEMENT OF THE CASE.............................................................. 2

ARGUMENT...................................................................................... 3

    I.    THE PLAIN MEANING OF "ARMS" COVERS SUPPRESSORS AND OTHER FIREARM ACCESSORIES AND ACCOUTREMENTS.................. 4

    II.    THE SECOND AMENDMENT'S PREFATORY CLAUSE CONFIRMS AN EXPANSIVE MEANING OF "ARMS" .................................................. 9

    III.    BECAUSE THE SECOND AMENDMENT PROTECTS ORDINARY MILITARY EQUIPMENT, IT MUST PROTECT SUPPRESSORS............. 11

    IV.    THE PANEL'S OPINION REEKS OF PROHIBITED INTEREST BALANCING ................................................................................ 15

CONCLUSION ........................................................................... 16

# TABLE OF AUTHORITIES

**CONSTITUTION**

Second Amendment ................................................................ 2, *passim*

**STATUTES**

National Firearms Act ............................................................... 2

**CASES**

*Aymette v. State*, 21 Tenn. 154 (1840) ....................................... 6
*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................. 3, *passim*
*Duncan v. Bonta*, 695 F. Supp. 3d 1206 (S.D. Cal. 2023) ..................... 8-9
*Ezell v. City of Chicago*, 651 F. 3d 684 (7th Cir. 2011) ............................ 9
*Lynchburg Range & Training, LLC v. Northam*, 105 Va. Cir. 159
    (Lynchburg 2020) ............................................................ 9
*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) ....... 3, *passim*
*Ocean State Tactical, LLC v. Rhode Island*, 2022 U.S. Dist. LEXIS
    227097 (D.R.I. Dec. 14, 2022) ...................................... 12
*State v. Duke*, 42 Tex. 455 (1874) ............................................... 5
*Teixeira v. Cty. of Alameda*, 873 F.3d 670 (9th Cir. 2017) ..................... 8
*United States v. Miller*, 307 U.S. 174 (1939) ...................................... 6, 8
*United States v. Rahimi*, 602 U.S. 680 (2024) ....................................... 11

**MISCELLANEOUS**

T. Branch, <u>Principia Legis et Aequitatis</u> (4th ed. 1822) ........................... 5
J. Frazer, *Delivering Support to Front Lines*, <u>Marines</u>
    (Mar. 16, 2011) ............................................................. 10
M. Gonzales, *Marine Corps Begins Widespread Fielding of
    Suppressors*, <u>Marines</u> (Dec. 30, 2020) ............................ 10
A Pennsylvanian, No. 3, <u>Pa. Gazette</u> (Feb. 20, 1788) ............................ 6
SilencerShop, *Do Suppressors Affect Accuracy? - Suppressor
    Accuracy Test*, YouTube.com (Apr. 7, 2024) ................................. 14

B. Snell, *Recent Suppressor Registrations Eclipse Numbers for*

*the NFA's First Eight Decades Combined*, CONG.
SPORTSMEN'S FOUND. (Jan. 6, 2025) .............................................. 14

# INTEREST OF THE *AMICI CURIAE*[1]

*Amici curiae*, Gun Owners of America, Inc., Gun Owners Foundation, Gun Owners of California, Tennessee Firearms Association, Tennessee Firearms Foundation, Virginia Citizens Defense League, Virginia Citizens Defense Foundation, Grass Roots North Carolina, Rights Watch International, Heller Foundation, America's Future, and Conservative Legal Defense and Education Fund are nonprofit organizations exempt from federal income taxation under Section 501(c)(3) or Section 501(c)(4) of the Internal Revenue Code.  Each organization participates actively in the public policy process, and has filed numerous *amicus curiae* briefs in federal and state courts defending U.S. citizens' rights against government overreach.

---

[1] It is hereby certified that all parties consented to the filing of this *amici curiae* brief; no counsel for a party authored this brief in whole or in part; and that no person other than these *amici curiae*, their members, or their counsel made a monetary contribution to its preparation or submission.

## STATEMENT OF THE CASE

In 2022, law enforcement raided the home of George Peterson during an investigation into an apparently mismanaged firearms business. *See  United States v. Peterson*, 2025 U.S. App. LEXIS 2736, at *1-3 (5th Cir. Feb. 6, 2025).  During the raid, authorities seized a homemade firearm suppressor stored in Peterson's bedroom closet safe. *Id.* at *3.  The suppressor was in working condition, but lacked a serial number "and was not registered in the National Firearms Registration and Transfer Record."  *Id.* at *3.  Prosecuted for an unregistered suppressor under the National Firearms Act, Peterson moved to dismiss, arguing the statute violates his right to keep and bear arms under the Second Amendment. *United States v. Peterson*, 2023 U.S. Dist. LEXIS 146946, at *2 (E.D. La. Aug. 21, 2023).  The district court denied the motion, concluding that, as firearm accessories, suppressors are not "bearable arms," and thus are unprotected by the Second Amendment. *Id.* at *3.  On February 6, 2025, a panel of this Court affirmed on the same basis. *Peterson* at *6-8.

## ARGUMENT

The government does not allege that Mr. Peterson committed any crime with his unregistered suppressor. Rather, it would appear that Mr. Peterson merely kept the suppressor for self-defense within his home – a location where the U.S. Supreme Court has described "the need for defense of self, family, and property is most acute." *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008). As the panel acknowledged, firearm suppressors certainly are "useful" for this purpose – they "reduce noise, recoil, and flash," all of which can deafen, disorient, and temporarily blind those who defensively operate firearms in enclosed spaces. *Peterson* at *6 n.3. Thus, a firearm suppressor certainly constitutes a "modern instrument[] that facilitate[s] armed self-defense." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 28 (2022). And under that "general definition," *id.*, such an instrument would be an "arm" protected under the Second Amendment's plain text, and to criminalize its simple possession would be "invalid." *Heller* at 629.

But the panel thought differently. Affirming denial of Peterson's motion to dismiss a felony charge for simply possessing a bedroom

3

suppressor, the panel held that the Second Amendment protects – *at the outset* – only those objects "necessary to the use of a firearm." *Peterson* at *8. This novel and restrictive interpretation has no basis in text or history, misreads some Supreme Court precedents, and ignores others entirely – like the passage from *Bruen* above. If uncorrected, this holding will authorize governments to whittle firearms down to their skeletal structures, as no sights, optics, holsters, barrel attachments, ergonomic accessories, or even *handgrips* are truly "necessary" for a firearm to discharge a bullet.

## I.    THE PLAIN MEANING OF "ARMS" COVERS SUPPRESSORS AND OTHER FIREARM ACCESSORIES AND ACCOUTRAMENTS.

The panel absolved the government of its historical burden by dispensing with Mr. Peterson's constitutional challenge at the textual threshold, denying that a suppressor could be an "arm" under the Second Amendment. Beginning with its recitation of *Heller*'s historical definition of "arms," the panel immediately constrained its definition of "arms" to "weapon[s]." *Peterson* at *5. Quipping that "a suppressor, by itself, is not a weapon," and cannot be a weapon "unless … thrown," the

4

panel summarily concluded that, if an instrument "is not necessary to the use of a firearm, [then] it is not protected by the plain text of the Second Amendment." *Id.* at *6-8. This restrictive definition defies the text, conflicts with historical understanding, and contravenes the Supreme Court's holdings.

First, the term "arms" includes more than just "weapon[s]" – and certainly more than only those components "necessary" for a firearm to function. Indeed, "[u]nder the word arms[] are included not only shields, swords and helmets, but also clubs and stones." Thomas Branch, Principia Legis et Aequitatis 14 (4th ed. 1822).[2] As the Supreme Court confirmed in *Heller*, "Timothy Cunningham's important 1771 legal dictionary defined 'arms' as 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'" *Heller* at 581. This broad understanding persisted well into the 19th century, when courts explained that "arms" are not only those implements which are "appropriate" for "use in self-defense" and "proper for the defense of the State," *State v. Duke*, 42 Tex. 455, 458 (1874), but

---

[2] https://tinyurl.com/43v9kdbu.

also those which "constitute the ordinary military equipment." *Aymette v. State*, 21 Tenn. 154, 158 (1840).

But the panel gave "equipment" short shrift, badly misrepresenting *United States v. Miller*, 307 U.S. 174 (1939), to claim that the Second Amendment protects only "gunpowder, lead, and cartridges – items *necessary* to a firearm's operation." *Peterson* at *7. But this cherrypicked list ignores the rest of *Miller*'s inventory: "a good bayonet and iron ramrod well fitted thereto, a cartridge box properly made, … [and] a good knapsack and canteen...." *Id.* at 181. Of course, none of *those* items were strictly "necessary" to operate a firearm, and yet they were included in the earliest understanding of "arms." As Tench Coxe once observed, the militia's "swords, and *every other terrible implement of the soldier, are the birth-right of an American.*" A Pennsylvanian, No. 3, <u>Pa. Gazette</u>, Feb. 20, 1788, at 2.

Second, despite citing *Bruen*, the panel omitted the most applicable parts of that opinion. As the Supreme Court explained, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the

6

founding." *Bruen* at 28.  Thus, the Second Amendment "covers modern instruments that *facilitate* armed self-defense."  *Id.* (emphasis added). Many instruments *facilitate* armed self-defense, suppressors included. Indeed, as the panel admitted, suppressors "might prove useful" for self-defense, as they "can reduce noise, recoil, and flash, and many gun owners utilize them to protect their hearing...."  *Peterson* at *6 & n.3. How a "modern instrument[]" which reduces the disorienting effects of gunfire and improves situational awareness does *not* "facilitate armed self-defense," the panel apparently did not feel necessary to explain. *Bruen* at 28.

At bottom, the term "arms" includes more than just "weapons."[3] The panel initially seemed to acknowledge as much, noting that *Heller*

---

[3] Try as it might to distance "suppressors" from "firearms," the panel's holding ultimately sanctions the criminalization of *suppressed firearms*.  What is more, the panel's holding fails to wrestle with integrally suppressed firearms (*e.g.*, https://www.silencershop.com/silencerco-maxim-9.html), whose suppressors are *permanently affixed* to their barrels and therefore are undoubtedly "*necessary* to a firearm's operation."  *Those* are "weapons," and *those* "weapons" are "arms."  And because the challenged statute clearly imposes a "firearm regulation" (*Bruen* at 17), the panel should have applied *Bruen*'s historical framework and required the government to defend the challenged law by demonstrating a broad and enduring

described "arms" not only as "weapons" but *also* "armor" *and* things "w[orn] for … defence," *and* anything one "takes into his hands" – but ultimately declared that an arm "must be a weapon." *Peterson* at *5. Under this constrained view, body armor would not be an "arm," as one hardly would consider such passive defensive gear to be a "weapon." Nor would firearm holsters, magazines, or any of the other "equipment" which "the people" (especially a "well regulated Militia"[4]) use alongside firearms be "weapons" – such as helmets, plate carriers, load-bearing equipment, camouflage clothing, iron sights, optics, lights, lasers, slings, field rations, hydration, or portable shelter. Yet these are precisely the sort of modern "accoutrements" the Founders contemplated and *Miller* acknowledged as "arms." The Second Amendment protects them all.[5]

---

historical Founding-era tradition of banning ubiquitous firearm components and accessories.

[4] *See Miller* at 178 ("With obvious purpose to assure the continuation and render possible the effectiveness of such [militia] forces the declaration and guarantee of the Second Amendment were made. It must be interpreted and applied with that end in view.").

[5] Not only does the Second Amendment cover "weapons," but it has been interpreted to also cover ancillary items which facilitate their use and training at arms. *See, e.g., Teixeira v. Cty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017). This includes a right to items such as barrels, triggers, ammunition, and magazines. *See, e.g., Duncan v. Bonta*, 695 F.

## II.   THE SECOND AMENDMENT'S PREFATORY CLAUSE CONFIRMS AN EXPANSIVE MEANING OF "ARMS."

The Second Amendment guarantees, first and foremost, a "well regulated Militia, being necessary to the security of a free State...." U.S. Const. Amend. II.   In *Heller*, the Supreme Court explained that the Second Amendment's prefatory militia clause "announces a purpose" for codifying the right – "to secure the ideal of a citizen militia, which might be necessary to oppose an oppressive military force if the constitutional order broke down." *Heller* at 577, 599.   Thus, the Founders intended the Second Amendment to protect the keeping and bearing of the "ordinary military equipment" necessary to effectuate the militia clause. *Id.* at 624.

Of course, the militia clause "does not limit … grammatically" the operative right to keep and bear arms.   *Id.* at 577.   The Founders understood the Second Amendment not just to "prevent elimination of the militia," which comprised only a subset of "the people," but also to

---

Supp. 3d 1206, 1223 (S.D. Cal. 2023).  The Second Amendment's ancillary protections have even been extended to protect shooting ranges.  *See, e.g., Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011); *Lynchburg Range & Training, LLC v. Northam*, 105 Va. Cir. 159, 162 (Lynchburg 2020).

9

protect "all Americans," "self-defense[,] and hunting," among all other lawful purposes. *Id.* at 599, 581, 599. But because "[l]ogic demands that there be a link between the stated purpose and the command," the Second Amendment must protect, *at minimum*, that which gives effect to its prefatory clause. *Id.* at 577.

The equipment currently used by the U.S. Marine Corps – the "tip of the spear" perhaps most analogous to the militia – is instructive as to the sorts of equipment the prefatory militia clause contemplates.[6] Indeed, Marines are not unlike the Founding-era citizen-soldier and militiaman, operating in smaller groups at the front lines, often without artillery or much logistical support. And for almost a decade now, the United States has been issuing its Marines suppressors – instruments with "myriad benefits" in the government's own estimation.[7] If the Second Amendment was intended to "prevent elimination of the militia," *Heller* at 599, the government cannot eliminate militia equipment. This protection extends

---

[6] James Frazer, *Delivering Support to Front Lines*, <u>Marines</u> (Mar. 16, 2011), <u>https://tinyurl.com/mr3bm526</u>.

[7] Matt Gonzales, *Marine Corps Begins Widespread Fielding of Suppressors*, <u>Marines</u> (Dec. 30, 2020), <u>https://tinyurl.com/msrw68t</u>.

10

to that equipment which was "not in existence at the time of the founding," *Bruen* at 28, suppressors included. To hold otherwise "would be as mistaken as applying the protections of the right only to muskets and sabers." *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

## III. BECAUSE THE SECOND AMENDMENT PROTECTS ORDINARY MILITARY EQUIPMENT, IT MUST PROTECT SUPPRESSORS.

As discussed *supra*, the panel decision sweeps far afield, implying that all firearm "accessories," not just suppressors, are entirely undeserving of Second Amendment protection, on the theory that they are not themselves "weapons," and are not strictly "*necessary* to a firearm's operation...." *Peterson* at *6-7 ("while possession of firearms themselves is covered … possession of firearm accessories is not."). In addition to violating the plain meaning of the text, as further confirmed by the context of the prefatory clause, the panel's decision leads to absurd results. Take, for example, "America's rifle," the AR-15:

11



Such a quintessential firearm is undoubtedly an "arm" protected by the Second Amendment.  Yet under the test the panel concocted, this rifle's stock is not a "by itself … a weapon," nor is it strictly "necessary to" the AR-15's "operation."  But a stock is certainly "useful" in effectively using an AR-15.

The same can be said for the above AR-15's pistol grip, handguard, magazine,[8] iron sights, and flash hider.  Indeed, these items are merely attachments – or "accessories" – to the skeletal firearm.  *Peterson* at *6.  Unless detached and "thrown" (*id.*), none of these parts "by itself" is a "weapon," nor is any "necessary" to the AR-15's mechanical function.  Thus, under the panel's logic, none of the AR-15's accessory parts would

---

[8] *See Ocean State Tactical, LLC v. Rhode Island*, 2022 U.S. Dist. LEXIS 227097, at *30 (D.R.I. Dec. 14, 2022) ("a firearm can fire bullets without a detachable magazine").

be protected by the Second Amendment, leaving Americans to shoot the sort of ridiculous contraption pictured below:



The panel did not wrestle with these obvious implications of the atextual test it contrived. But based on the panel's interpretation, any non-integral part, when separated from its host firearm, would itself not be a "weapon" and thus could be regulated (or banned) independently from the firearm itself.

What is more, while acknowledging that suppressors "might prove useful" as a "gas dissipater" when shooting a firearm, to "reduce noise, recoil, and flash, and … protect … hearing" *Peterson*, 2025 U.S. App. LEXIS 2736 at *6, the panel failed to recognize just how integral a suppressor can be to its host firearm. *See also* Def.-Appellant's Pet. For Reh'g at 3-4. On many firearms, especially those utilizing rifle caliber ammunition out of short barrels, the concussive effect makes the weapon practically unshootable without a suppressor to tame the noise and flash

13

of unburnt powder exiting the bore. On other firearms, the addition of a suppressor renders the weapon *more accurate*. SilencerShop, *Do Suppressors Affect Accuracy? - Suppressor Accuracy Test*, YouTube.com (Apr. 7, 2024), https://tinyurl.com/bddtsb3v.

To be sure, firearm suppressors did not exist at the Founding. But with advances in manufacturing and reductions in cost, the popularity of suppressors among American gun owners has grown exponentially. *See* Barry Snell, *Recent Suppressor Registrations Eclipse Numbers for the NFA's First Eight Decades Combined*, CONG. SPORTSMEN'S FOUND. (Jan. 6, 2025), https://tinyurl.com/y5992uxc. And as *Heller* reminds, the Second Amendment extends to "those … bearable arms … that were not in existence at the time of the founding," and certainly protects "an entire class of 'arms' that is overwhelmingly chosen by American society for [a] lawful purpose." *Id*. at 582, 628. It would defy common sense to conclude that, had modern suppressors been available that the Founding, they would not have been found on the end of every militiaman's musket. Suppressors are precisely the sort of firearms accessory that the Founders envisioned by the Second Amendment's use of the term "arms."

14

## IV. THE PANEL'S OPINION REEKS OF PROHIBITED INTEREST BALANCING.

Lest this Court need an additional reason to rehear this case, the panel's decision is reminiscent of the very sort of "judge-empowering 'interest-balancing'" that *Bruen* prohibited. *Bruen* at 22. At times, the panel appeared to recognize that Second Amendment "arms" must extend beyond firearms and "weapons." Indeed, the panel attempted to distinguish shooting ranges from suppressors, demurring that suppressors are not "*necessary* to the use of a firearm," and so their criminalization has not "rendered the right to bear arms *meaningless*." *Peterson* at *8 (emphasis added). But the amorphous language of 'necessity' and 'meaning' sounds in interest balancing, as it impermissibly enables "judges to assess the costs and benefits of firearms restrictions." *Bruen* at 23[9]; *see also* at 18 (rejecting judicial schemes which "analyze 'how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right.'").

---

[9] *Cf. Peterson* at *6 ("a suppressor might prove useful"), *and* at *7 (theorizing that a firearm works "perfectly well" without a suppressor), *with Heller* at 634 ("A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.").

# CONCLUSION

For the foregoing reasons, the petition for rehearing en banc should

be granted.

Respectfully submitted,

_/s/ Robert J. Olson_

John I. Harris III
SCHULMAN, LEROY & BENNETT,
P.C.
3310 West End Avenue
Suite 460
Nashville, TN 37203

Stephen D. Stamboulieh
STAMBOULIEH LAW, PLLC
P.O. Box 428
Olive Branch, MS 38654

March 13, 2025

Robert J. Olson*
William J. Olson
Jeremiah L. Morgan
WILLIAM J. OLSON, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA 22180-5615
(703) 356-5070
Fax (703) 356-5085
rob@wjopc.com
*Counsel of Record

16

# CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of Gun Owners of America, Inc., *et al.* in Support of Defendant-Appellant's Petition for Rehearing en banc, was made, this 13th day of March, 2025, by the Court's Case Management/ Electronic Case Files system upon the attorneys for the parties.

*/s/ Robert J. Olson*
Robert J. Olson
Attorney for *Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

IT IS HEREBY CERTIFIED:

1.     That the foregoing Brief *Amicus Curiae* of Gun Owners of America, Inc., *et al.* in Support of Defendant-Appellant's Petition for Rehearing en banc complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because this brief contains 2,340 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as well as Circuit Rule 32.1, because this brief has been prepared in a proportionally spaced typeface using Microsoft Word version 2021 in 14-point Century Schoolbook.

      */s/ Robert J. Olson*
Robert J. Olson
Attorney for *Amici Curiae*
Dated:  March 13, 2025