# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

## No. 24-30043

**UNITED STATES OF AMERICA,**
    Plaintiff - Appellee

v.

**GEORGE PETERSON,**
    Defendant - Appellant

Appeal From The United States District Court
For The Eastern District Of Louisiana

Honorable Jay C. Zainey, District Judge
Criminal Docket No. 22-231, Section "A"

## GOVERNMENT'S SUPPLEMENTAL RESPONSE TO DEFENDANT-APPELLANT'S PETITION FOR REHEARING EN BANC

**MICHAEL M. SIMPSON**
**ACTING UNITED STATES ATTORNEY**
**EASTERN DISTRICT OF LOUISIANA**

**KEVIN G. BOITMANN**
**Assistant U.S. Attorney, Chief of Appeals**
**650 Poydras Street, Suite 1600**
**New Orleans, Louisiana 70130**
**(504) 680-3109**
**Attorney for the United States of America**

**May 23, 2025**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................... ii

TABLE OF AUTHORITIES......................................................................... iii

INTRODUCTION ..........................................................................................1

ARGUMENT..................................................................................................2

    I.     Regulations on firearm suppressors burden the right protected
          by the Second Amendment.........................................................2

    II.    The National Firearms Act's restrictions on suppressor
          possession comply with the Second Amendment.............................5

CONCLUSION..............................................................................................11

CERTIFICATE OF SERVICE AND ECF COMPLIANCE.............................12

# TABLE OF AUTHORITIES

**Cases**

*Andrews v. State*, 50 Tenn. 165 (1871)..................................................................3

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011).........................8

*District of Columbia v. Heller*, 554 U.S. 570 (2008). .....................................3, 6

*Hill v. Colorado,* 530 U.S. 703 (2000)..............................................................3

*Luis v. United States*, 578 U.S. 5 (2016)..........................................................2

*Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575 (1983) ..........................................................................2

*Mock v. Garland,* 75 F.4th 563 (5th Cir. 2023) ................................................3

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022)........... 5, 6, 9, 10

*United States v. Miller*, 307 U.S. 174 (1939) ...............................................3, 7

*United States v. Peterson*, 127 F.4th 941 (5th Cir. 2025)..................................1

*United States v. Rahimi*, 602 U.S. 680 (2024).......................................... passim

**Statutes**

18 U.S.C. § 922(t)...............................................................................10

26 U.S.C. § 5811 ..................................................................................5

26 U.S.C. § 5812(a) .............................................................................5

26 U.S.C. § 5841 ...............................................................................1, 5

**Other Authorities**

David B. Kopel & Joseph G.S. Greenlee, *The History of Bans on Types of Arms Before 1900*, 50 J. Legis. 223 (2024)..........................................................6

*The General-Law Right to Bear Arms*, 99 Notre Dame L. Rev. 1467 (2024).........6

**INTRODUCTION**

George Peterson entered a conditional guilty plea to possession of an unregistered suppressor, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.[1] A panel of this Court affirmed, holding that the registration requirement does not violate the Second Amendment because suppressors are not "arms" protected by the Second Amendment. *United States v. Peterson*, 127 F.4th 941 (5th Cir. 2025). Peterson petitioned for rehearing en banc, and the United States opposed, arguing that the panel's decision was consistent with Supreme Court precedent and the decisions of other circuits.

As part of its broader evaluation of its litigating positions in Second Amendment cases, *see* Executive Order 14206, *Protecting Second Amendment Rights*, the United States has re-evaluated its position in this case. In the view of the United States, the Second Amendment protects firearm accessories and components such as suppressors. As a result, restrictions on the possession of suppressors burden the right to bear arms, and a ban on the possession of suppressors or other similar accessories would be unconstitutional. The government's earlier argument to the contrary was incorrect. But the National

---

[1] The indictment used the statutory term "silencer," but this filing uses the term "suppressor" both to be consistent with the panel opinion and because the term "silencer" is inaccurate. Suppressors modestly reduce the decibel level of the firearms to which they attach; they do not "silence" them.

Firearms Act's registration and taxation requirement is constitutional because it imposes a modest burden on a firearm accessory that is consistent with this Nation's historical tradition because suppressors are specially adaptable to criminal misuse. For this reason, the panel correctly affirmed Peterson's conviction. Accordingly, although rehearing en banc is unwarranted, the Court should grant panel rehearing to correct the panel opinion's analysis. *See* Fifth Circuit Rule 40, I.O.P. (stating that "[a] petition for rehearing en banc is treated as a petition for rehearing by the panel if no petition is filed" and that "[t]he panel may grant rehearing without action by the full court").

## ARGUMENT

**I. Regulations on firearm suppressors burden the right protected by the Second Amendment.**

The Second Amendment protects the "right to keep and bear Arms." U.S. Const. amend. II. Regardless of whether suppressors themselves constitute "arms," restrictions on suppressors burden the right to "keep and bear Arms" and so must be closely scrutinized to ensure compliance with the Second Amendment. "Constitutional rights . . . implicitly protect those closely related acts necessary to their exercise." *Luis v. United States*, 578 U.S. 5, 26-27 (2016) (Thomas, J., concurring in judgment). In the First Amendment context, for example, a tax on ink and paper burdens the freedom of the press. *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 582 (1983). As Justice

2

Scalia observed, "[t]here comes a point . . . at which the regulation of action intimately and unavoidably connected with traditional speech is a regulation of speech itself." *Hill v. Colorado,* 530 U.S. 703, 745 (2000) (Scalia, J., dissenting).

So too, in the Second Amendment context, "[t]he right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms, and to keep them in repair." *Andrews v. State*, 50 Tenn. 165, 178 (1871). Although none of these activities literally involves the "keep[ing]" of "arms," each activity is a fundamental component of the right protected by the Second Amendment. *See United States v. Miller*, 307 U.S. 174, 180 (1939) ("The possession of arms also implied the possession of ammunition . . . ." (quotation omitted)). The right to bear arms similarly "implies the learning to handle and use them in a way that makes those who keep them ready for their efficient use." *District of Columbia v. Heller*, 554 U.S. 570, 618 (2008) (quoting Thomas Cooley, *Treatise on Constitutional Limitations* 271 (1868)). And the right extends to firearm accessories that are useful to the exercise of the right. *See Mock v. Garland*, 75 F.4th 563, 588 (5th Cir. 2023) (Willett, J., concurring) ("[P]rotected Second Amendment 'conduct' likely includes making common, safety-improving modifications to otherwise lawfully bearable arms.").

Suppressors have several benefits to persons in exercising their Second Amendment rights. Most importantly, suppressors limit the noise caused by firearms, reducing a firearm's audible muzzle blast by up to 30 decibels.[2] This noise reduction helps shooters avoid permanent hearing damage and facilitates communication with others when engaging in both civilian self-defense and public defense. Indeed, because of the hearing-related benefits of suppressors, the U.S. Marine Corps began issuing them to infantry units in 2020.[3] Suppressors appear to improve accuracy and aid in target re-acquisition by reducing recoil and muzzle rise.[4] And suppressors aid in target shooting—an activity protected by the Second Amendment—by reducing noise pollution and providing additional hearing protection beyond personal protective equipment. All these practical benefits demonstrate that suppressors facilitate the constitutional right to keep and bear

---

[2] Michael Stewart et al., Nat'l Hearing Conservation Ass'n, *NHCA Position Statement: Recreational Firearm Noise* 5 (March 16, 2017), https://www.hearingconservation.org/assets/docs/NHCA_position_paper_on_firea.pdf.

[3] Marines.mil, *Marine Corps Begins Widespread Fielding of Suppressors*, https://www.marines.mil/News/News-Display/Article/2459549/marine-corps-begins-widespread-fielding-of-suppressors/.

[4] *See* Savage Arms, *How Suppressors Work To Reduce Noise and Recoil*, https://savagearms.com/blog/post/how-suppressors-work-to-reduce-noise-and-recoil; Congressional Sportsmen's Foundation, *Firearm Suppressors*, https://congressionalsportsmen.org/policy/firearm-suppressors/.

arms. Accordingly, restrictions on suppressors impose a burden on using firearms that implicates the Second Amendment.

## II. The National Firearms Act's restrictions on suppressor possession comply with the Second Amendment.

Although the National Firearms Act's restrictions on suppressor possession implicate the right to bear arms, the modest burden they impose does not violate the Second Amendment. Under the Act, every suppressor must be registered to its possessor in the National Firearms Registration and Transfer Record. 26 U.S.C. § 5841. As a condition of registration, the Bureau of Alcohol, Tobacco, Firearms and Explosives confirms that the transferee is eligible to possess the device under federal, state, and local law. *See* 26 U.S.C. §§ 5812(a), 5822. And the person acquiring the suppressor must pay a $200 tax. 26 U.S.C. § 5811. Although a total ban on suppressors or other similar accessories would be unconstitutional, the Act's modest regulations pass muster.

When the government regulates the right to keep and bear arms, it bears the burden of showing that the challenged regulation is "consistent with the Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). That is a rigorous test, not a "regulatory blank check." *Id.* at 30. "Why and how the regulation burdens the right are central to this inquiry." *United States v. Rahimi*, 602 U.S. 680, 692 (2024).

5

Even if the government can identify a specific historical analogue for a statute, the statute must comply with the broader "principles that underpin [the Nation's] regulatory tradition." *Rahimi*, 602 U.S. at 692. The founding generation distinguished between a valid regulation and an impermissible "infringement" of the right to keep and bear arms. *See* Daniel D. Slate, *Infringed*, 3 J. Am. Const. Hist. 381, 382-387 (2025). A restriction could amount to an unconstitutional infringement if (among other reasons) it served an illegitimate purpose, burdened the right more severely than necessary to serve a valid purpose, or broadly negated the right. *See* William Baude & Robert Leider, *The General-Law Right to Bear Arms*, 99 Notre Dame L. Rev. 1467, 1489 (2024).

Our Nation's regulatory tradition shows that the Second Amendment does not guarantee an "unlimited" right "to keep and carry any weapon whatsoever." *Heller*, 554 U.S. at 626. For example, American legislatures have long "prohibited the carrying of 'dangerous and unusual weapons.'" *Bruen*, 597 U.S. at 47 (citation omitted); *see Heller*, 554 U.S. at 627.

Particularly relevant here, American legislatures have also traditionally imposed special taxes on arms that are especially susceptible to criminal misuse. *See* David B. Kopel & Joseph G.S. Greenlee, *The History of Bans on Types of Arms Before 1900*, 50 J. Legis. 223, 227 (2024). For instance, many 19th-century

6

legislatures taxed weapons such as dueling pistols, sword canes, Bowie knives, Arkansas toothpicks, and dirks.  *See id.* at 293-328 (collecting statutes).

The National Firearms Act's restrictions on suppressors are "'relevantly similar'" to those historical laws in "why" they burden the right to bear arms. *Rahimi*, 602 U.S. at 698 (citation omitted).  Suppressors are susceptible to criminal misuse, not because they purportedly "silence" a firearm—they do not—but because they make it harder for law enforcement to identify or detect the source and direction of gunfire, such as in drive-by or mass shootings or assassination attempts.[5]  This is not to say that suppressors are widely used for criminal purposes—their beneficial use is overwhelming in relation to their criminal use— but they do present a niche case for criminal use.  For example, Christopher Dorner in 2013 used suppressed weapons to murder two people in a populated area and later to shoot at police officers without revealing his position.[6]  DeWayne Craddock used a suppressor during a mass shooting at a Virginia Beach Municipal

---

[5] *See* Lisa Marie Pane, *Did 'Silencer' Make a Difference in Virginia Beach Carnage?*, KRON4 (June 1, 2019), https://www.kron4.com/news/national/did-gunmans-silencer-make-a-difference-in-the-carnage/ (quoting former ATF agent's observation that "a suppressor will distort the sound in such a way that it would not immediately be recognizable as gunfire").

[6] The Police Foundation, *Police Under Attack: Southern California Law Enforcement Response to the Attacks by Christopher Dorner* 14, 20, 35-36, https://www.policinginstitute.org/wp-content/uploads/2015/07/Police-Under-Attack.pdf.

Center.⁷ And Luigi Mangione is alleged to have used a suppressor in the killing of an insurance executive on a busy New York City street.⁸ Thus, while suppressors are beneficial to the exercise of Second Amendment rights, they are also specially adaptable to criminal misuse beyond the mere fact that all weapons (and thus all accessories) can be used in the commission of a crime—a fact that was accounted for in the policy choice made by the People when they adopted the Second Amendment.⁹

The Act's restrictions on suppressors also resemble historical laws in "how" they burden the right to bear arms. *Rahimi*, 602 U.S. at 698. The Act imposes only a minor burden on the right of armed self-defense. It regulates a nonessential firearm accessory, so the burden on the Second Amendment is less severe than a

---

⁷ Wilt Johnson & Bill Hutchinson, *Suspected Virginia Beach Shooter Used Legally-Bought Gun Suppressor*, ABC News (June 4, 2019), https://abcnews.go.com/US/suspected-virginia-beach-gunman-resigned-personal-reasons-massacre/story?id=63449625.

⁸ *See* U.S. Dep't of Justice, Press Release, *Luigi Mangione Charged with the Stalking and Murder of UnitedHealthcare CEO Brian Thompson and Use of a Silencer in a Crime of Violence* (Dec. 19, 2024), https://www.justice.gov/archives/opa/pr/luigi-mangione-charged-stalking-and-murder-unitedhealthcare-ceo-brian-thompson-and-use.

⁹ Because ordinary firearms, unlike suppressors, are not peculiarly susceptible of criminal misuse, registration laws or taxes targeting such firearms likely would not serve or be proportionate to any legitimate public-safety purpose. *See, e.g.*, *Heller v. District of Columbia*, 670 F.3d 1244, 1291 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("requir[ing] registration of individual guns" generally does not serve any legitimate purpose and is usually "aimed at deterring gun ownership"). In addition, a law regulating or taxing the firearm itself would impose a more severe burden on the right to keep and bear arms than regulations on useful but non-essential accessories such as suppressors.

8

taxation or registration requirement applicable to weapons or essential components themselves. And the Act does not ban suppressor possession; rather, it requires only registration, payment of a modest tax, and a background check. Those burdens are comparable to the burdens imposed by historical laws taxing weapons that pose a special danger of misuse.

The Supreme Court has determined that other similarly modest burdens are consistent with the Second Amendment. For example, in invaliding a New York law requiring a "special need" to obtain a firearm-carry license, *Bruen* made clear that it was not calling into question the constitutionality of the "shall-issue" licensing regimes in 43 states, which issued permits based on the general desire for self-defense. *Bruen*, 597 U.S. at 38 n.9. The Court explained that these schemes, "which often require applicants to undergo a background check or pass a firearms safety course," are permissible so long as "lengthy wait times" or "exorbitant fees" do not "deny ordinary citizens their right to public carry." *Id.* at 38 n.9.

The National Firearms Act's $200 transfer tax for suppressors is neither "exorbitant," nor does it deny ordinary citizens the ability to possess and use a suppressor—much less a firearm. The $200 fee is generally less than the cost of a suppressor itself, which can range from $350 to $1,500.[10] And the fee is not

---

[10] *See* Silencer Central, *How Much Does a Suppressor Cost?*, https://www.silencercentral.com/blog/how-much-does-a-suppressor-cost/.

9

disproportionate to the licensing fees charged by shall-issue states, which ranged from around $10 to $140 in 2017.[11] The Act's requirements are no more burdensome than a variety of other constitutional regulations, such as the requirements that a firearm purchaser obtain a background check, *see* 18 U.S.C. § 922(t); or that a person licensed to carry a firearm undergo safety training and pay a reasonable fee, *see Bruen*, 597 U.S. at 13, 38 nn.1, 9.

As discussed above, history and tradition permit Congress to impose modest regulations on suppressors. The National Firearms Act does not prohibit possession of suppressors. It requires only registration, a background check, and a $200 tax that is not indexed to inflation.

The Act's restrictions on suppressors are also consistent with the broader "principles that underpin [the Nation's] regulatory tradition." *Rahimi*, 602 U.S. at 692. The restrictions serve the legitimate purpose of regulating nonessential firearm components that are particularly susceptible to criminal misuse; they are not pretextual provisions that seek simply to inhibit the exercise of constitutional rights; and the restriction involved is a modest tax, not a prohibition or other regulation that could "broadly restrict arms use by the public generally." *Id.* at

---

[11] *See* Connecticut Office of Legislative Research, *Gun Permit and License Fees*, https://www.cga.ct.gov/2017/rpt/pdf/2017-R-0066.pdf.

698, 700. While a complete ban on suppressors would be unconstitutional, the Act's restrictions comply with the Second Amendment.

## CONCLUSION

For the foregoing reasons, this Court should grant panel rehearing and hold that (a) the National Firearms Act's regulations on suppressors burden the right to bear arms but that (b) the Act's modest burden is consistent with the principles underlying the Second Amendment.

Respectfully submitted,

MICHAEL M. SIMPSON
ACTING UNITED STATES ATTORNEY

/s/ *Kevin G. Boitmann*
KEVIN G. BOITMANN
Assistant United States Attorney
LA Bar Roll No. 26203
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3109
E-Mail: kevin.boitmann@usdoj.gov

**CERTIFICATE OF SERVICE AND ECF COMPLIANCE**

I hereby certify that on this 23rd day of May, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. The following ECF-registered counsel of record was served by Electronic Notice of Docket Activity:

    David H. Thompson, dthompson@cooperkirk.com
    Richard J. Richthofen, Jr., rick@rjrlawfirm.com

I further certify the foregoing document meets the required privacy redactions; that it is an exact copy of the paper document; and the document has been scanned with the most recent version of a commercial virus scanning program and is virus-free.

                        /s/ *Kevin G. Boitmann*
                        KEVIN G. BOITMANN