No. 24-30043

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GEORGE PETERSON,

*Defendant-Appellant.*

---

Petition from the United States District Court for the Eastern District of Louisiana, Case No. 2:22-CR-231-1, the Honorable Jay C. Zainey

---

## DEFENDANT-APPELLANT'S
## PETITION FOR REHEARING EN BANC

---

Richard J. Richthofen, Jr.
3900 Canal Street
New Orleans, Louisiana 70119
Office: (504) 899-7949
Facsimile: (504) 899-2518
Email: rick@rjrlawfirm.com

Cody J. Wisniewski
FPC ACTION FOUNDATION
Suite 320
5550 Painted Mirage Road
Las Vegas, Nevada 89149
Telephone: (615) 955-4306
Facsimile: (615) 334-0463
cwi@fpcafhq.org

David H. Thompson
Peter A. Patterson
William V. Bergstrom
Athanasia O. Livas
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C., 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com
alivas@cooperkirk.com

*Counsel for Defendant-Appellant George Peterson*

No. 24-30043

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

GEORGE PETERSON,

*Defendant-Appellant*.

Petition from the United States District Court for the Eastern District of Louisiana, Case No. 2:22-CR-231-1, the Honorable Jay C. Zainey

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.   **Plaintiff-Appellee:**

   **United States of America**

   Counsel:

   David M. Berman, Assistant U.S. Attorney
   Kevin G. Boitmann, Assistant U.S. Attorney
   Diane Hollenshead Copes, Assistant U.S. Attorney
   U.S. Attorney's Office
   Eastern District of Louisiana
   650 Poydras Street, Suite 1600

i

New Orleans, LA 70130
(504) 680-3000
david.berman@usdoj.gov
kevin.boitmann@usdoj.gov
diane.copes@usdoj.gov

2. **<u>Defendant-Appellant</u>:**

**George Peterson**

<u>Counsel</u>:

David H. Thompson
Peter A. Patterson
William V. Bergstrom
Athanasia O. Livas
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C., 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com
alivas@cooperkirk.com

Richard J. Richthofen, Jr.
3900 Canal Street
New Orleans, Louisiana 70119
Office: (504) 899-7949
Facsimile: (504) 899-2518
Email: rick@rjrlawfirm.com

Cody J. Wisniewski
FPC Action Foundation
Suite 320
5550 Painted Mirage Road
Las Vegas, Nevada 89149
Telephone: (615) 955-4306
Facsimile: (615) 334-0463

cwi@fpcafhq.org

/s/ David H. Thompson
David H. Thompson

*Counsel for Defendant-Appellant*
*George Peterson*

## RULE 40 STATEMENT AND INTRODUCTION

In its opinion following panel rehearing, the panel corrected an earlier error by withdrawing its holding that firearms outfitted with suppressors are entitled to no Second Amendment protection. Published Op., Doc. 151-1 (Aug. 27, 2025) ("Panel Op.") (attached as Ex. 1). But the panel made two new foundational analytical errors that bring this Court's precedent out of line with Supreme Court precedent, create a circuit split, and threaten far-reaching legal and practical consequences.

First, the panel equated the National Firearm Act's *taxation* and *registration* regime with mere *licensing*. As then-Judge Kavanaugh explained, licensing is distinct from registration. *See Heller v. District of Columbia* ("*Heller II*"), 670 F.3d 1244, 1270 (D.C. Cir. 2011) (Kavanaugh, J., dissenting). For this reason, any presumption of constitutionality for shall-issue licensing regimes has no bearing and should not have been applied to save the Government's taxation and registration regime . The ordinary test—which the Government cannot satisfy—must apply. Indeed, the Supreme Court has already suggested that the "National Firearms Act's restrictions" in particular "might be unconstitutional" when applied to protected arms. *District of Columbia v. Heller*, 554 U.S. 570, 624 (2008).

Second, and relatedly, the panel was wrong to equate *taxation* on the exercise of a constitutional right with a mere licensing-*fee*. In the First Amendment context, the Supreme Court has indicated that a licensing regime may include a fee to defray

the costs of granting licenses. *See Cox v. State of New Hampshire*, 312 U.S. 569, 577 (1941). Taxation, on the other hand, seeks to raise revenue and has the effect of deterring constitutionally protected conduct. The citizens of this Nation cannot be made to pay a tax that singles out the "exercise of … a high constitutional privilege." *Follett v. Town of McCormick*, 321 U.S. 573, 578 (1944).

The panel's opinion now creates a circuit split, as the Third Circuit recently held that an additional $50 fee for a Handgun Carry Permit, which went beyond merely "defray[ing] the costs" of running the program, is likely unconstitutional and should be enjoined. *Koons v. New Jersey*, Nos. 23-1900 & 23-2043, Doc. 147 (3d Cir. Sep. 10, 2025), at 75; *see id.* at 77 ("It is by now pellucid that a state may not impose a charge for the enjoyment of a right granted by the federal constitution." (internal quotation marks omitted)). The Court so held despite acknowledging that "shall-issue licensing regimes and their associated fees . . . remain presumptively constitutional." *Id.* at 76, 138.

Finally, in the alternative, if the Government's taxation and registration regime here can somehow be equated to a mere shall-issue licensing regime, this Court should reconsider its precedent interpreting Supreme Court dicta to require a categorical carve-out from the Second Amendment's protection for such regulations.

The constitutional questions presented in this case are both legally and practically important.

If left to stand, the panel's broadly stated rule presuming the constitutionality of government registration and taxation requirements on constitutionally protected conduct would create a license by which the Government could undermine the Supreme Court's recent Second Amendment precedents.

The practical impact of the panel's holding is likewise significant. As Peterson has explained, suppressors are highly popular in the United States, with millions owned by law-abiding Americans. Suppressors reduce the sound of a firearm and therefore protect the hearing of individuals and those around them when a firearm is used for lawful purposes such as training, self-defense, or hunting. Whether the Government may tax and require the registration of these hugely popular Arms—with attendant criminal penalties for mistakes in compliance—will impact millions of Americans.

But the panel's reasoning goes beyond suppressors. Indeed, it would appear to allow the Government to tax and require the registration of *every privately owned firearm in the Nation*. This is a sure sign that something in the panel's opinion has gone awry.

The Court should grant review to give the full Court the opportunity to resolve this important issue and to bring this Court's caselaw in line with Supreme Court precedent providing the applicable test for the constitutional right to keep and bear arms.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS.........................................................i

RULE 40 STATEMENT AND INTRODUCTION ................................................iv

TABLE OF AUTHORITIES.................................................................... viii

ISSUES MERITING EN BANC REVIEW.............................................................1

STATEMENT ......................................................................................................1

    I.     Factual Background................................................................................1

    II.    The First Panel Decision, the Government's Changed Position, and Panel Rehearing........................................................................................2

    III.   The Second Panel Decision...................................................................3

REASONS FOR GRANTING REHEARING EN BANC ......................................4

    I.     The Panel Erred In Applying a Presumption of Constitutionality to the NFA's Registration and Taxation Regime. ...........................................4

    II.    In the Alternative, this Court Should Reconsider Its Precedent Recognizing a Second Amendment Carve-Out for Licensing Regimes. ............................................................................................12

    III.   This Case Presents Exceptionally Important Constitutional Questions. .........................................................................................13

CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page**

*Boynton v. Kusper*,
 494 N.E.2d 135 (Ill. 1986).......................................................................10, 11

*Cox v. New Hampshire*,
 312 U.S. 569 (1941)...................................................................... iv, v, 9

*District of Columbia v. Heller*,
 554 U.S. 570 (2008)..........................................................................iv, 4

*Follett v. Town of McCormick*,
 321 U.S. 573 (1944)................................................................................v

*Harper v. Va. Bd. of Elections*,
 383 U.S. 663 (1966).............................................................................10

*Heller v. District of Columbia*,
 670 F.3d 1244 (D.C. Cir. 2011) ....................................................iv, 5, 6, 8, 9

*Kwong v. Bloomberg*,
 723 F.3d 160 (2d Cir. 2013)....................................................................9

*McCulloch v. Maryland*,
 17 U.S. (4 Wheat.) 316 (1819) .................................................................10

*McRorey v. Garland*,
 99 F.4th 831 (5th Cir. 2024)................................................................1, 12

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Rev.*,
 460 U.S. 575 (1983)..............................................................................10

*Murdock v. Pennsylvania*,
 319 U.S. 105 (1943)..............................................................................10

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
 597 U.S. 1 (2022).........................................................................3, 4, 6, 12

*Sonzinsky v. United States*,
 300 U.S. 506 (1937)................................................................................9

*United States v. Rahimi*,
 602 U.S. 680 (2024)..........................................................................12, 13

## Constitutional Provisions, Codes, and Statutes

U.S. Const. amend. II ................................................................................4

18 U.S.C. § 922(g)(1) ..............................................................................8

26 U.S.C.
    § 5802 ...............................................................................................8
    § 5871 ...............................................................................................8

## Other Authorities

Lila Chen & Scott E. Brueck, *Noise & Lead Exposures at an Outdoor Firing Range – California*, Nat'l Inst. Occupational Safety & Health (Sep. 2011), https://perma.cc/6ED7-E99T .....................................................1

*CPI Inflation Calculator*, U.S. Bureau of Lab. Stat., https://perma.cc/6YBY-EDSB ........................................................9

Brian J. Filgor, *Prevention of Hearing Loss from Noise Exposure*, Better Hearing Inst. (2011), https://perma.cc/TE5F-4PU8 ......................1

*Koons v. New Jersey*, Nos. 23-1900 & 23-2043, Doc. 147 (3d Cir. Sep. 10, 2025) .......................................................... v, 11, 13

*National Firearms Act*, ATF, https://perma.cc/UZ5A-GQZ5 .............................9, 10

*Suppressor Owner Study*, NSSF (2025), https://perma.cc/BRS8-4ZK6 ...................2

## ISSUES MERITING EN BANC REVIEW

1. Whether the National Firearms Act's regime of taxation and registration of suppressors is equivalent to a shall-issue licensing regime.

2. Whether the National Firearms Act's regime of taxation and registration of suppressors is constitutionally permitted.

3. In the alternative, if the NFA taxation and registration scheme can be equated to a licensing regime, whether this Court's holding in *McRorey v. Garland* recognizing a presumption of constitutionality for certain licensing regimes is consistent with Supreme Court precedent and the Second Amendment. 99 F.4th 831, 837 (5th Cir. 2024).

## STATEMENT

### I.    Factual Background

Firearm suppressors work to reduce the concussive force and volume of sound produced by a firearm, which helps to prevent ear damage for those near a firearm when it is fired. *See* Brian J. Filgor, *Prevention of Hearing Loss from Noise Exposure* at 8, BETTER HEARING INST. (2011), https://perma.cc/TE5F-4PU8; Lila Chen & Scott E. Brueck, *Noise & Lead Exposures at an Outdoor Firing Range – California* at 5, NAT'L    INST.    OCCUPATIONAL    SAFETY    &    HEALTH (Sep. 2011), https://perma.cc/6ED7-E99T. Suppressors make the use of firearms safer for several reasons. *See* Pet'n for Reh'g at 1–4, Doc. 95-1 (Mar. 6, 2025)

1

("Initial Pet'n"). They are legal to possess in the vast majority of states, and by the end of 2024, ATF reported a total of 4.5 million registered suppressors. *See Suppressor Owner Study* at 7, NSSF (2025), https://perma.cc/BRS8-4ZK6.

After a law enforcement raid on George Peterson's home, he was indicted for possession of an unregistered suppressor under 26 U.S.C. §§ 5841, 5861(d), and 5871. Peterson moved to dismiss his indictment, arguing that the NFA's prohibition on unregistered firearm suppressors violates the Second Amendment. The district court denied his motion, and Peterson conditionally pleaded guilty while reserving his right to raise the Second Amendment issue on appeal.

## II.     The First Panel Decision, the Government's Changed Position, and Panel Rehearing

In its first opinion, the panel affirmed the district court's denial of Peterson's motion to dismiss and rejected his Second Amendment argument because "suppressors are not 'Arms' within the Second Amendment's purview." Withdrawn Panel Op. at 4, Doc. 62-1 (Feb. 6, 2025).

Peterson petitioned for rehearing of the panel's decision, and the Court ordered a response, Doc. 97 (Mar. 7, 2025). The Government moved the Court to delay its ruling on en banc rehearing so that it could reconsider its position in this case. Mot., Doc. 113 (Mar. 20, 2025).

The Government filed a supplemental response, Doc. 135 (May 29, 2025), urging panel rehearing and reversing its earlier position that suppressors are not

2

entitled to constitutional protection. The Government conceded that suppressors *are* entitled to Second Amendment protection and that "a ban on the possession of suppressors . . . would be unconstitutional." *Id.* at 1. But, the Government went on, the "National Firearms Act's registration and taxation requirement is constitutional because it imposes a modest burden on a firearm accessory that is consistent with this Nation's historical tradition because suppressors are specially adaptable to criminal misuse." *Id.* at 1–2. The Court withdrew the earlier panel opinion. Mem. to Counsel, Doc. 141 (June 17, 2025).

### III.    The Second Panel Decision

In its new opinion, the panel again affirmed, but on different grounds. Abandoning its previous holding that suppressors and other firearm accessories are entitled to no Second Amendment protection, the Court "[a]ssum[ed] without deciding that the Second Amendment protects suppressors." Panel Op. at 1.

As relevant here, the panel applied *Bruen* to hold that "the NFA suppressor-licensing scheme is presumptively constitutional because it is a shall-issue licensing regime." *Id*. at 11. Thus, because the NFA had not "been 'put toward abusive ends' through 'exorbitant fees' or 'lengthy wait times in processing license applications,'" Peterson could not overcome the "presumption of constitutionality for shall-issue licensing regimes." *Id.* at 12–14 (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 38 n.9 (2022)).

## REASONS FOR GRANTING REHEARING EN BANC

### I.    The Panel Erred In Applying a Presumption of Constitutionality to the NFA's Registration and Taxation Regime.

The text of the Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II.

The Supreme Court has articulated the applicable test for determining what conduct is protected by the Second Amendment. Under *Bruen*, the first task is to determine whether "the Second Amendment's plain text covers an individual's conduct." 597 U.S. at 17. An "arm" includes "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581 (quoting TIMOTHY CUNNINGHAM, 1 A NEW AND COMPLETE LAW DICTIONARY (1764)). "To justify its regulation" of arms, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. *Heller* and *Bruen* have provided the sole historical tradition that may remove an arm from the Second Amendment's protective scope—the tradition of regulating weapons that are dangerous and unusual. *Heller*, 554 U.S. at 627; *Bruen*, 597 U.S. at 47.

The panel did not apply this ordinary test, however, or hold the Government to its burden to present a sufficient historical analog. Instead, the panel purported to

4

apply *Bruen* by holding that "the NFA suppressor-licensing scheme is presumptively constitutional because it is a shall-issue licensing regime." Panel Op. at 11.

This was error. The constitutionality of certain shall-issue licensing regimes cannot justify the Government's taxation or registration regime because shall-issue licensing and taxation plus registration are fundamentally different for constitutional purposes. As then-Judge Kavanaugh explained in *Heller II*, it is "important to distinguish registration laws from licensing laws." 670 F.3d at 1291 (Kavanaugh, J., dissenting). After all, "[l]icensing requirements . . . can advance gun safety by ensuring that owners understand how to handle guns safely, particularly before guns are carried in public." *Id.* "Registration requirements, by contrast, require registration of individual guns and do not meaningfully serve the purpose of ensuring that owners know how to operate guns safely in the way certain licensing requirements can. For that reason, registration requirements are often seen as half-a-loaf measures aimed at deterring gun ownership." *Id.* And importantly under *Bruen*, both in *Heller II* and here, "[t]he fundamental problem . . . is that registration of lawfully possessed guns is not 'longstanding.' " *Id.*

Once the distinction between licensing and registration is properly understood, it is clear that the NFA's registration-and-taxation regime for suppressors is not a mere licensing regime. It does not simply "meaningfully serve the purpose of ensuring that owners know how to operate guns safely in the way

5

certain licensing requirements can," *id.* at 1291 (Kavanaugh, J., dissenting), but instead requires that suppressors be listed with their owners in a national registry. Were there any doubt, the crime with which Peterson was charged was "possessing an un*registered* suppressor in violation of various provisions of the National Firearms Act," Panel Op. at 1 (emphasis added).

Critically, the panel did not engage in this threshold analysis before concluding that the Government's registration regime is equivalent to a presumptively constitutional licensing system. In reality, the Government's regulation of suppressors implicates the plain text of the Second Amendment, and it therefore follows that the challenged law is unconstitutional unless the Government can demonstrate that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. The panel did not purport to engage in this analysis directed by the Supreme Court.

The panel made a threshold category mistake in equating the registration regime with a shall-issue licensing regime. For that reason, the degree of the registration's burden is not dispositive. In any case, the panel erred in dismissing any burdens required by the Government's registration regime because of insufficient record evidence about Peterson's burden or registration activities specifically. *See* Panel Op. at 13–15. The burdens imposed by the Government's registration regime

are enshrined in federal law and thus constitute legislative facts. And no one can dispute that Peterson, like all Americans, is subject to this registration requirement.

Similarly, it is not correct that Peterson's counsel at the original panel stage "conceded" that "the NFA suppressor-licensing scheme is presumptively constitutional because it is a shall-issue licensing regime." Panel Op. at 11 (citing Oral Argument at 4:45). For one, Peterson's counsel did not concede constitutionality, assuming such a thing were possible. He did not even concede that the Government's regime was a shall-issue *licensing* regime, which is the operative term in the Court's description of counsel's alleged concession and the key premise of the Court's presumption of constitutionality. He only agreed that the regime was "shall-issue" as opposed to a "may-issue," and only after the Court specifically referred to the regime as a "*registration* requirement" in its question. Oral Argument at 4:54–5:20 (emphasis added). And that concession does not affect the constitutional analysis, because registration requirements are incompatible with the Second Amendment regardless of whether the Government shall or may register qualifying arms.

For another, Peterson *did* address why the shall-issue dicta from *Bruen* does not encompass the Government's registration scheme in his supplemental letter brief—beyond simply arguing that the *Bruen* language was dicta, as the panel suggests. *See* Letter Br. Reply at 7, Doc. 137 (June 12, 2025) (explaining why the

Government's tax is distinct from mere administrative licensing fees, "even if *Bruen*'s dicta were to apply"). So, any claimed forfeiture or waiver was later corrected in supplemental briefing. To the extent the argument was not central to Peterson's position, it is because the panel went further than any party—including the Government. The Government believed itself bound to engage in the ordinary *Bruen* inquiry to establish a sufficient historical analog. Gov't Supp. Br. at 5–10. The panel, by contrast, introduced the more extreme proposition that the Government's taxation and registration regime is *presumptively* constitutional.

Regardless, the registration burden the Government imposes on suppressor possession is significant. An individual must submit an ATF Form 4 to the Bureau of Alcohol, Tobacco, Firearms and Explosives, which requires submission to the federal government of personal identifying information, a personal photograph, and fingerprints. 26 U.S.C. § 5802. Violation of the NFA exposes a person to significant criminal penalties, including up to ten years in prison, up to a $10,000 fine, or both. *See* 26 U.S.C. § 5871. Plus, a collateral consequence of conviction is presumptive disarmament for life. *See* 18 U.S.C. § 922(g)(1). Peterson has first-hand experience of these consequences, as he was sentenced to two years in prison for possessing a suppressor in a safe in his home. These invasive and time-consuming "registration requirements" and their attendant criminal punishments are just the kind of "half-a-

loaf measure[] aimed at deterring gun ownership" that registration schemes impose. *Heller II*, 670 F.3d at 1291 (Kavanaugh, J., dissenting).

Independently, any presumptive constitutionality of mere licensing *fees* in a shall-issue regime cannot justify an outright *tax* on the exercise of constitutionally protected firearm ownership. In the licensing context, fees are generally capped at the cost of processing the licensing applications. A tax, on the other hand, generates government profit from constitutionally protected conduct. *See Cox*, 312 U.S. at 577 ("The fee was held to be not a revenue tax, but one to meet the expense incident to the administration of the act and to the maintenance of public order in the matter licensed.") (internal quotation marks omitted). In the Second Amendment context, courts have applied *Cox* to determine whether a licensing fee is "designed to defray (and does not exceed) the administrative costs associated with the licensing scheme." *Kwong v. Bloomberg*, 723 F.3d 160, 166 (2d Cir. 2013).

The NFA's tax on the possession of suppressors is just that, a tax. Indeed, the NFA was justified as an exercise of Congress's tax power. *See Sonzinsky v. United States*, 300 U.S. 506, 513–14 (1937). When the NFA was adopted in 1934, its $200 tax was equivalent to *over $4800* today. *See CPI Inflation Calculator*, U.S. BUREAU OF LAB. STAT., https://perma.cc/6YBY-EDSB. The tax plainly was prohibitive when enacted—a point the Government acknowledges. *See National Firearms Act*, ATF, https://perma.cc/UZ5A-GQZ5 ("The $200 making and transfer taxes on most NFA

firearms were considered quite severe and adequate to carry out Congress' purpose to discourage or eliminate transactions in these firearms."). While inflation has reduced the burden of the NFA's $200 tax, that does not change the fact that it is a flat revenue tax, not a processing fee.

Applying the taxation power against the Second Amendment imposes a heavy burden on Second Amendment rights. As Chief Justice Marshall famously put it, "the power to tax involves the power to destroy." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 431 (1819). Thus, constitutional rights are not a proper subject of taxation. The Supreme Court has in several different contexts held that the exercise of constitutional rights may not be subject to special taxation. *See, e.g.*, *Murdock v. Pennsylvania*, 319 U.S. 105, 114 (1943); *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 668 (1966); *Minneapolis Star & Trib. Co. v. Minn. Comm'r of Rev.*, 460 U.S. 575, 591 (1983). In the First Amendment context, the Supreme Court has said that the relevant burden is the mere "threat of burdensome taxes" that is "implicit in singling out the press" for special taxation, *Minneapolis Star & Trib. Co.*, 460 U.S. at 585 & n.7, not a judicial assessment of whether taxes have reached an abusive level in any particular case. In *Harper*, the Supreme Court struck down a poll tax of $1.50, reasoning that "introduc[ing] wealth or payment of a fee as a measure of a voter's qualifications" is unconstitutional regardless of "[t]he degree of the discrimination." 383 U.S. at 668. And in *Boynton v. Kusper*, the Illinois Supreme

Court applied similar principles in the marriage context to invalidate a tax on marriage licenses even though "the tax in question [was] only $10." 494 N.E.2d 135, 369 (Ill. 1986). "[O]nce we acknowledge the State's power to specially tax the issuance of marriage licenses," the court reasoned, "a significant interference with the fundamental right to marry has been established." *Id*. at 370.

The Third Circuit recently reached the same conclusion in a Second Amendment case analogous to this one, enjoining a $50 "fee" on the issuance of handgun permits where the fee did not go towards defraying the cost of operating the permit program. *Koons*, Nos. 23-1900 & 23-2043, Doc. 147, at 75–77, 138. Because the statute there did "not connect that fee to either the administration of the permitting scheme itself or maintenance of public order created by the licensed conduct," the fee was "neither incidental to nor necessarily caused by their bearing arms," and thus likely unconstitutional under the aforementioned Supreme Court precedents. *Id.* at 77, 138.

The same reasoning applies here. At minimum, the Court should engage in the applicable analysis before presuming that the Government's regulation of commonly possessed arms may be regulated in this significant way consistent with the Second Amendment.

**II.    In the Alternative, this Court Should Reconsider Its Precedent Recognizing a Second Amendment Carve-Out for Licensing Regimes.**

To the extent the Government's taxation and registration regime here can be equated to a mere shall-issue licensing requirement (and to be clear, it cannot), the Court should still grant en banc rehearing to reconsider its earlier precedent of *McRorey*, which recognized a presumption of constitutionality for certain firearm licensing laws based on footnoted dicta in *Bruen*. 99 F.4th at 837 (citing *Bruen*, 597 U.S. at 38 n.9).

Licensing requirements implicate the plain text of the Second Amendment because they impose a condition precedent on possessing protected firearms. *Bruen* itself supports this proposition, since it involved a licensing regime and the Court conducted what has now become the applicable Second Amendment analysis. 597 U.S. at 11. Because licensing implicates conduct protected by the Second Amendment—the possession of firearms—the burden lies on the government to justify its licensing requirements. *Id.* at 17.

While the Supreme Court also clarified in footnoted dicta that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes,'" *id.* at 38 n.9, that clarification was not a holding. And the Supreme Court itself in *United States v. Rahimi rejected* the government's attempt to rely on the Court's earlier dicta about the Second Amendment right and

"responsible" citizens. 602 U.S. 680, 701–02 (2024) ("The question was simply not presented." (citation omitted)).

At most, footnote nine of *Bruen* may be read to suggest that the Supreme Court ultimately may find "shall-issue" licensing laws consistent with the historical tradition of firearms regulation underlying the Second Amendment. But it does not create a carve-out to the comprehensive test *Bruen* otherwise created.

### III.    This Case Presents Exceptionally Important Constitutional Questions.

This case asks how far the Federal Government may go in making the exercise of a fundamental right difficult, costly, and ultimately punishable by criminal law. This question is undoubtedly important to the law and to everyday people seeking clarity about whether their conduct is constitutionally protected.

And the case presents the question in the context of one of the most common, popular, and safe arms in the United States. As explained above, millions of suppressors are possessed by law-abiding Americans and are used for the lawful purposes of preventing hearing damage to the firearm user and others around them, which facilitates the safety and efficacy of firearm use.

Further, the panel's opinion has created a circuit split on the critical question whether the Government may impose a tax on the exercise of conduct protected by the Second Amendment. *Koons*, Nos. 23-1900 & 23-2043, Doc. 147, at 75–77, 138.

Finally, because the panel's reasoning was far-reaching, so too are its implications. The panel laid down a novel framework in which taxation and registration regimes are equivalent to shall-issue licensing regimes and thus presumed constitutional. The Government, by contrast, applied the Supreme Court's ordinary framework requiring that it provide a sufficient historical analog to justify a regulation of protected Second Amendment conduct. *See* Gov't Supp. Br. at 5–10. The panel's holding went even further than the Government.

That the panel went further than the Government suggested in this case is significant. The Government conceded, for example, that similar registration laws or taxes targeting "ordinary firearms" themselves would not be constitutional. *Id*. at 8 n.9. The panel's reasoning, by contrast, contains no such logical limit. If the panel's ruling were to stand, the Government presumably could impose taxation and registration requirements on every privately owned firearm in the Nation. It is hard to imagine that the Founders of this Nation would have stood for such a scheme, and there certainly is no historical tradition of regulation that would support it.

This Court should reconsider the panel's opinion and provide clarity about whether common suppressors and other protected arms may be taxed and subject to registration consistent with the Second Amendment.

## CONCLUSION

The Court should grant the petition for rehearing en banc.


Dated: September 10, 2025                    Respectfully Submitted,

                                             /s/ David H. Thompson
                                             _____

                                             David H. Thompson
Richard J. Richthofen, Jr.                   Peter A. Patterson
3900 Canal Street                            William V. Bergstrom
New Orleans, Louisiana 70119                 Athanasia O. Livas
Office: (504) 899-7949                       COOPER & KIRK, PLLC
Facsimile: (504) 899-2518                    1523 New Hampshire Ave., N.W.
Email: rick@rjrlawfirm.com                   Washington, D.C., 20036
                                             Telephone: (202) 220-9600
                                             Facsimile: (202) 220-9601
Cody J. Wisniewski                           dthompson@cooperkirk.com
FPC ACTION FOUNDATION                        ppatterson@cooperkirk.com
Suite 320                                    wbergstrom@cooperkirk.com
5550 Painted Mirage Road                     alivas@cooperkirk.com
Las Vegas, Nevada 89149
Telephone: (615) 955-4306
Facsimile: (615) 334-0463
cwi@fpcafhq.org


*Counsel for Defendant-Appellant George Peterson*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit on September 10, 2025 by using the CM/ECF system and that service was accomplished on all counsel of record by the appellate CM/ECF system.

/s/ David H. Thompson

David H. Thompson

*Counsel for Defendant-Appellant George Peterson*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 40(d)(3) because this brief contains 3,871 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman, 14 pt. Font.

Dated: September 10, 2025

/s/ David H. Thompson
David H. Thompson

*Counsel for Defendant-Appellant*
*George Peterson*

17